————o————

HAMILTON GAMBLE, *et al.* Respondents, *vs.* CHARLES GIBSON, Executor of HAMILTON R. GAMBLE, Appellant.

1. *Executor cannot charge more than the amount of his commissions for services in investing funds for the heirs and acting as attorney and agent.*—Where an executor performs services as attorney or agent for his estate, as where he makes investments for the benefit of the heirs, or acts as their attorney in cases in Court or their agent in completing the building of houses, etc., he cannot therefor charge the estate with any amount over and above his regular commissions, and the rule is not altered, where, instead of charging the amount directly against the estate, he retains its equivalent in a part of the property purchased. He may employ an attorney or agent, if necessary, but if he acts as such himself, he cannot charge for his services.

2. *Executor—Power of to collect rents—Responsibility for rents collected—Report of referee as to, not interfered with by Supreme Court.*—Although an executor transcends his power in taking charge of the real estate and collecting rents thereon, he is responsible to the estate for them. And the rule holds, although the rents were in fact collected by the heirs, if they acted as his agents and he received a commission on the collections. And as to the question of their agency and his right to commissions where the issue is submitted to referee, the Supreme Court will not disturb his finding.

3. *Executor—Investment of funds of estate in gold—Responsibility for resulting losses.*—An executor is not chargeable for losses incurred by investment in gold of national currency belonging to the estate, in his hands, where the transaction was in good faith, more particularly where the heirs ratify and consent to the transfer.

4. *Executor—Accounts rendered—Assent of heirs to, when not binding.*—Where the heirs expressed dissatisfaction with an account rendered them by the executor, but assented to it for the avowed purpose of avoiding a difficulty, *held,* that such assent did not preclude them from afterward objecting to the account on his final settlement. The doctrine that a stated account is presumed to be correct when not objected to within a reasonable time has no application to such a case.

*Appeal from St. Louis Circuit Court.*

*Charles Gibson, pro se.*

I. All parties agree that Gibson invested $25,000 of the moneys of the estate in the purchase of this property, and he has received credit for the same in his probate settlements. The claim is, that in dividing the houses among Gibson and David and Mary Gamble, and the apportionment of the price to be charged to each party, their four houses were rated too high and Gibson's too low. Therefore, the first question is, what the perfect title to all the five houses cost, and how much Gibson paid for all the titles.

Services rendered by appellant in " winnowing out " the title were not in his capacity as executor, but as agent for David and Mary Gamble under their written order. He was acting against the will and not under it. His investment of the $25,000 under the order of the heirs, and the credit of same in his probate accounts, was the sum total of his action as executor. To test this, I ask, are his securities liable for anything beyond the payment of the money? Yet this judgment is conclusive as to them. (State vs. Holt, 27 Mo., 343.)

The waiver of the jurisdiction of the court below to determine the questions, is no acknowledgment that the services were rendered as executor.

II. The estate being solvent, the *onus probandi* is on the heirs to show affirmatively that the executor actually collected the rents, or, at least, that he, and not the heirs were in charge of the real estate. (Chambers vs. Wright, 40 Mo., 485; Aubuchon vs. Long, 23 Mo., 99.)

The executor having no interest in the real estate, or its produce, and having nothing to do with it, the Probate Court has no jurisdiction over the subject, further than to take proof of how much rent the executor actually received. The report shows that H. Gamble and D. C. Gamble were in charge of the real estate. The whole deficit occurred during the time D. C. Gamble was in control—from October, 1864 to April, 1865—and therefore, he, and not the executor, should be charged with the deficit.

III. Under the fourth exception, the referee finds " the whole amount collected by David C. Gamble to be fifteen hundred and twenty-five dollars." Now, if the executor be responsible, it is on the theory that Gamble was in charge as his agent, or rent collector, and, if so, he cannot ask the court to presume that Gibson collected all the rents as executor, and not to presume that *he* collected all of them as agent.

IV. If the finding be correct, and the executor is chargeable with the rents in gross, the referee erred in not allowing him his commissions of five per cent. on the whole amount.

V. The executor, in his purchase of the gold, was acting as trustee for the benefit of others, and having acted in good faith and with reasonable discretion should be treated with great tenderness. (Fudge vs. Durn, 51 Mo., 264; Tiff. & Bull. Trusts & Tr., 599.)

Appellant had verbal authorization from D. C. Gamble, during his minority, to make the investment, and after he became of age, when appellant rendered him an account of

the investment in which the "loss" was "included," David gave him a receipt to cover the balance. He not only gave the receipt, but the gold bought was sold and proceeds entered to his credit, and he accepted the benefit of that credit. No exception was taken, nor objection raised, till the final settlement, five years afterward. He cannot now question the propriety of the investment. (Highly vs. Barron, 49 Mo., 107; Ferguson vs. Bell, 17 Mo., 347; Marshall vs. Fulton, 10 Wal., 684; see also, Pars. Contr., § 3, p. 49; Philip vs. Belden, 2 Edw. Ch. Rep., p. 1; Davis vs. Spurling, 1 Tenn., 199; S. C., 1 Russ. and M., 64; Botifeur vs. Wyman, 1 McCord Ch., 161; Kronenberger vs. Binz, 56 Mo., 121; Jacob vs. Emmetts, 11 Paige, 145; Larue vs. White & M. Korn, 8 Dana, 46; Langdon vs. Roane, 6 Ala., 527; Carroll vs. Paul, 16 Mo., 241; May vs. Kloss, 44 Mo., 301; Wade vs. Emerson, 17 Mo., 269; Thompson vs. Bennett, 34 Mo., 479; Grumley vs. Webb, 48 Mo., 578; Campbell vs. Johnson, 44 Mo., 247; Gibson vs. Hanna, 12 Mo., 165.)

Miller's receipt for $3,500 in gold was also given in settlement of balance due appellant, *pro tanto*, and the receipt was allowed in his annual settlement in 1867, and no exception to the investment taken for two years afterwards. The parties "reached an understanding," and were "willing to call it square." Mr. Miller was not entirely satisfied, but did not wish any family disturbances or difficulty, and wrote across the face of the account "satisfactory," and signed it at the suggestion of Gibson. No one who makes a compromise is "entirely satisfied." The very idea of a compromise settlement is to "call it square," whether entirely satisfactory or not. No settlement will ever be binding if this point is good law.

At all events, interest should not be charged. (Madden vs. Madden, 27 Mo., 544; Clyce vs. Anderson, 40 Mo., 37.)

*A. J. P. Garesche*, for Appellant.

I. Upon the statement of facts found, the Supreme Court will see if the statement warrants the conclusion of law as pro-

nounced by the court.   (Skinner vs. Ellington, 15 Mo., 489 ;
Bates vs. Bowen, 17 Mo., 553 ; Hays vs. Hays, 26 Mo., 123 ;
Wertheimer vs. City of Booneville, 29 Mo., 257 ; Smith vs.
Harris, 43 Mo., 564 ; Gambs vs. Cov. Mut. Life Ins. Co., 50
Mo., 47 ; State vs. Sullivan, 51 Mo., 528.)

The report of the referee stands in attitude of a special
verdict.  (Western Boatm. Ben. Ass'n vs. Kribben, 48 Mo.,
41 ; Franz vs. Detrich, 49 Mo., 95.)   Hence, when findings
of facts do not justify the judgment, the Supreme Court will
reverse, and this in absence of any exceptions, or even a mo-
tion for review.   (Shore vs. Coons, 24 Mo., 556.)

II. The finding of the referee shows, that shortly after
qualifying, the executor turned over title papers and real es-
tate to the devisees, allowing them to collect rents ; and that
he charged in his settlements only those reported to him.   In
a case like this, where the estate is solvent, he cannot be
held for more   (Bompart's Adm'r vs. Lucas, 21 Mo., 604.)
The real estate and collection of rents thereon, belonged to
the heirs. (Masterson vs. Girard and heirs, 10 Ala., 60 ; Bul-
lock vs. Sneed, 13 Sm. and M., p. 294 ; Stinson vs. Stinson,
38 Me., 594 ; Haslage vs. Krugh, 25 Penn., 97 ; Aubuchon
vs. Long, 23 Mo., 91 ; City of Booneville vs. Ormrod, 26 Mo.,
193 ; Chambers vs. Wright's Adm'r, 40 Mo., 485 ; Mc-
Glothlin's Adm'r vs. Hemery, 44 Mo., 350.)

III. The executor was not responsible for losses caused by
his investment in gold.   (Kee's Ex'r vs. Kee's Creditors, 2
Grat., 116 ; Rowan vs. Kilpatrick, 14 Ill., 12 ; Elliott vs. Car-
ter, 9 Gratt., 559 ; Wilkinson vs. Stafford, 1 Ves., 32 ; Vez
vs. Emery, 5 Ves., 141 ; Powell vs. Evans, 5 Ves., 839 ; Pow-
ell vs. Stratton, 11 Grat., 801 ; Davis vs. Harsman, 21 Grat.,
200 ; Brun. Ap., 57 Pa., 52 ; Houston vs. Deloach, 43 Ala.,
372 ; Horine vs. Horine, adm'r, 11 Mo., 652 ; Fudge vs. Durn,
51 Mo., 267.)

IV. But even if investment cannot be sanctioned, the fault
has been condoned.   The accounts rendered by the executor
to the parties, in which this loss on gold was credited to the ex-

ecutor, were without any objection for nearly two years. (Sto. Ag., 239, 244, 253, 255, 258; Crutchfield vs. Haynes, 14 Ala., 53; Waring, Ex'r' vs. Purcell, Ex'r, 1 Hill's Ch. R., 202; Colbert vs. Daniel, 32 Ala., 322; Dugan vs. Hollins, 11 Md., 80; 11 Paige, 145; Lane vs. White & McKoin, 8 Dana, 46; Langdon vs. Roane's Adm'r, 6 Ala., p. 521; Phillips vs. Baldwin, 2 Edw., 1; Powell vs. Powell, 10 Ala. Chy., 912; Shepherd vs. State Bk., 15 Mo., 151; Freeland vs. Harn, 7 Cr., 151; 1 Sergt. & R., 406; Sherman vs. Sherman, 2 Vern., 176; Willis vs. Farnagau. 2 Atk., 251; Carroll vs. Paul, 16 Mo., 241; Wade vs. Emerson, 17 Mo., 269; Moore vs. Albright, 30 Mo., 250; May vs. Kloss, 44 Mo., 301; Thompson vs. Bennett, 34 Mo., 479; Kronenberger vs. Binz, 56 Mo., 122.)

*Lackland, Martin & Lackland,* for Respondent.

I. From the report of the referee under the third exception it appears that the executor invested the surplus funds of the estate in the purchase of real estate, in pursuance of a power in the will. He purchased five houses of nearly equal value for $25,500. Four of these houses he had conveyed to the heirs, the fifth one to himself. He took credit in his account for $25,000 as the cost of the four houses. This gave him the fifth house, worth $5,000, for about $500. The name given to this operation in equity, is "fraud."

The fact that he subsequently pretended to equalize the value of his acquisition with the other houses, by charging the heirs for legal services they never heard of, does not relieve transaction of its original character. It is only the addition of another fraud on the heirs. An executor or other trustee has no right to charge his estate for professional services rendered by himself. (Burris vs. Paige, 1 Key's 87; Moore vs. Frowd, 34 Myl. & Cr., 45; In v. Sherwood. 3 Beav., 338; Collins vs. Carey, 2 Beav., 128; Scatterwood vs. Harrison, Mosley, 128; Sheriff vs. Axa, 4 Russel, 33.) Besides, the heirs never could find out that he had rendered any services.

II. Under the fourth and fifth exceptions, the executor was held responsible for the rents. He held a fiduciary relation to the real estate. (Wagn. Stat., 84, § 2; Wagn. Stat., 89, §§ 49, 50; Rogers vs. Rogers, 1 Hopk., 515; Rogers vs. Rogers, 1 Paige, ch. 188.)

Where in fact he retains charge of the realty and collects the rents he is accountable as executor for them. (Campbell vs. Johns, 1 Sandf. Ch., 148; Stears vs. Stears, 1 Pick., 157.)

III. Under the seventh exception, the executor is chargeable for loss by reason of his unauthorized investment of the funds of the estate in the purchase of gold. (Quicks, Ex'r vs. Fisher, 1 Stock, N. J., 802; Worrel's Appeal, 23 Penn., 44; Ringgold vs. Ringgold, 1 Har. & G., 11; Whitney vs. Smith Law Rep., 4 Ch. App., 513; Fisher vs. Gilpin, 38 L. J. ch. N. S., 230; Hall vs. Hall, 43 Ala., 488; Pitts vs. Singleton, 44 Ala., 363; Kincade vs. Conley, 64 N. C., 387; Bruce vs. Strickland, 47 Ala., 192.)

It appears from the report that the executor deposited the funds of the estate in his own name in the Boatmen's Institution along with his private funds. This was a conversion to his own use. (Peyton vs. Smith, 2 Dev. & Batt., 325; Freeman vs. Fowler, 3 Meriv., 29; Dirker vs. Somers, 2 My. & R., 655; Ferris vs. Townshend, 1 Brown's Ch., 384; Massey vs. Bonner, 4 Mod., 414; Sutton vs. Schack, 1 Russ. Ch., 17; Mumford vs. Mumford, 6 John. Ch., 17; Case vs. Able, 1 Paige, 403; Garnier vs. Gardner, 12 Ed. Ch. 128; Beverly vs. Miller, 6 Mumf., 99; Clark vs. Tepping, 9 Beard, 284; Duffey vs. Duncan, 35 N. Y., 187.)

By this method of keeping the account it was impossible to tell whether the speculation was for the estate or for the executor. But when we consider that the loss was charged against the estate, and none of it on the executor, we are deeply impressed with the suspicion that if the speculation had resulted in a success, the estate would not have heard of it. Certainly the accounts were so kept that they could not have claimed it.

IV. The record before this court is only a fragment of the referee's report. The testimony was studiously excluded from the bill of exceptions. (Wagn. Stat., 148, § 40.) The exceptions to the report are all based upon an erroneous finding. This cannot be reviewed without the testimony in the record. (*In re* Grove, 10 Sim., 574; 2 Dan. Ch., 1299 ; Perry vs. Magwire, 31 Mo., 284.) Even though a referee's report be likened to the verdict of a jury, (Western Boatmen's Bk. vs. Kribben, 48 Mo., 37; Franz vs. Deitrick, 49 Mo., 95) the evidence should be present to determine the objections to it.

It is true, a verdict may be set aside where it is contradictory in itself. (Potter vs. Hescox, 30 Conn., 508.) So, also, may a referee's report be set aside where it is contradictory on its face without reference to the evidence. (Shore vs. Coons, 24 Mo., 556.)

There is no inconsistent finding in the report. Where this objection is to be taken advantage of, it must be urged by an appropriate motion. (Bigelow vs. N. M. R. R., 48 Mo., 510 ; Clark's Adm'r vs. Hann. & St. Joe. R. R., 36 Mo., 215.)

WAGNER, Judge, delivered the opinion of the court.

The record shows that Hamilton R. Gamble died on the 31st of January, 1864, leaving a large and valuable estate. His heirs were his widow, Caroline Gamble, and three children, Hamilton, who was then of age, Mary C., who became of age on the 31st of March, 1864, and married Edgar Miller on the 28th of November, 1865, and David C., who attained his majority September 16th, 1865. He made a will by which the defendant Gibson and John D. Coulter were appointed executors; the defendant alone qualified and took possession of the property, and proceeded to administer on the estate. At his final settlement certain exceptions were made to his accounts by the three children, the widow in the meantime having died, and upon a hearing in the Probate Court, a judgment was rendered from which he appealed.

In the Circuit Court, the whole question was committed to a referee to hear the evidence and take and state an account.

Upon the coming in of the report, the defendant made exceptions to different items contained in it, which were overruled, and he has brought the case here for review.

The evidence does not accompany the report in the transcript filed in this court, and we can therefore only notice the conclusions of the referee on the facts as found by him.

It seems that at the request of the heirs the executor was directed to invest an amount of money for Mary C. Miller and David C. Gamble in real estate. He purchased five houses in the city of St. Louis, on Clark Avenue, for $27,075. He conveyed two of them to Mrs. Miller, valued each at $7,375 ; two others to D. C. Gamble, valued each at $5,125, and retained the fifth one, which the referee finds to be of the value of $4,006, for himself. The four houses conveyed to the heirs, were, therefore, counted at $25,000 and thus he charged himself with only $2,075 for his house, and claimed that he was entitled to the house on account of extra services he had rendered in perfecting the title to the premises, making compromises, superintending their completion, etc. For his own personal services he asked to be allowed $2,000 for attending to the transaction. The referee disallowed the claim, and charged him with the value of the house. I entertain no doubt about the correctness of this decision. His superintending the completion of the houses, examining and perfecting the title, were all acts done by him in an official character.

In the investment of the funds of the estate in the purchase of the property, he was acting as executor, and an executor or trustee cannot obtain a personal advantage out of his trust. The commissions that the law or courts allow him, is the extent of his compensation. He may employ the services of an agent or attorney, if necessary, and pay for them out of the estate, but if he undertakes to act in such capacities himself for the estate, he can receive no compensation. This rule is so strict, that it has been held, that if the trustee has a partner and employs such partner, no charge can be made by the firm. (Collin vs. Carey, 2 Beav., 128 ; Lincoln vs. Winson, 9 Hare, 158 ; Christophers vs. White, 10 Beav.,

38—VOL. LIX.

523; Lyon vs. Baker, 5 DeG. & Sm., 622; Manson vs. Baille, 2 Maq. H. L. Ca., 80.) But if the trustee is excluded from all participation in the compensation, then his partner may be paid for services like any other person. (Burze vs. Burton, 2 Hare, 373.) A trustee has been refused compensation as solicitor for professional services rendered by himself, for himself, as trustee on the ground that no man can make a contract with himself. (Edmonds vs. Crenshaw, Harp. 232; Jenckins vs. Fickling, 4 Des., £70; Mayer vs. Galluchet, 6 Rich. Eq., 2.)

When the defendant assumed the burden of investing the money for the benefit of the heirs, he excluded himself from obtaining anything more than the statutory remuneration. It will not do to say that no charge was made against the estate or the heirs for these services. The answer is, that they were applied towards the payment of the house that the executor kept, and that was virtually charging them against the estate as the effect was to make the heirs pay so much more for their houses than they otherwise would have done. The executor, it appears, charged his commission and got credit for it, and that is all the law will permit him to retain.

The fourth and fifth exceptions may be considered together. They both relate to the collection of rents. In the fourth exception, it is alleged that the executor has taken credit in his accounts for a certain amount of rents as distributed by him to the heirs with which he never charged the debit side of his account. In the fifth exception it is averred that he ought to be charged with an amount of rents unaccounted for. The real estate was partitioned in January, 1866, and the referee holds him responsible for the rents up to that time. This was done on the ground that he had charge of the rents till partition was made. The general principle is that the realty descends to the heirs, and that the executor has nothing to do with it except in case of deficiency of assets, but where as matter of fact he does retain the charge of it and collects the rents, he is responsible for them as executor. We cannot go behind the finding of the referee in this mat-

ter. The executor contends that the rents during a portion
of the period were collected by the heirs, and therefore he is
not liable for them. But they were acting as his agents, and
he has credited himself with commissions on all the rents
collected by them as well as himself. If they took upon
themselves the burden of collecting the rents and distributing
the same among themselves independent of him, then most
certainly he is not entitled to any commissions for the amount
so collected ; but if the collection was made for him, entitling
him to commissions, then he should account for the same on
the settlement. The finding of the referee we must presume
was made upon sufficient evidence and there is nothing in
the record, which would justify its disturbance in this respect.

The seventh exception is the most material one, and that
is in reference to an investment made by the executor in gold.
It appears that in the summer of 1864, the executor was in
feeble health, and was about to depart for Minnesota, to be
gone till in the fall. He had money in his hands belonging
to the estate which consisted of the national currency of the
government. It was greatly depreciated in value as com-
pared with gold, and was constantly fluctuating. A mone-
tary crisis was feared, and it was hard to foretell the result.
His testator had in his life time invested in gold as a precau-
tionary measure, and had at the time of his death. $20,000 on
special deposit in bank. This gold the heirs directed the
executor to retain on special deposit. The executor himself
was carrying gold on his own private account, and he con-
sulted J. D. Coulter, who was a friend of the family and one
of the executors named in the will, who advised him to pur-
chase the gold to make the assets secure. He accordingly
did purchase some gold, and it turned out that there was a
loss on it. The referee finds that he acted in entire good
faith, but still charges him with the loss.

The general doctrine is, that a trustee has no power to
change the character of the trust fund, and if a change be
deemed necessary, or for the interest of the beneficiary, the

permission or sanction of the court should be obtained. This rule is necessary for the preservation of the fund.

The temptations to tamper with the fund by a trustee are so powerful and so numerous, the hopes of bettering the estate so often prove delusive, that the power of changing the character of the fund is most safely reposed in the discretion of judicial tribunals. This is the invariable rule in reference to converting money into real estate, or real estate into money. There the character is wholly changed, and it can only be done by delegating the authority in the instrument creating the trust, or in other instances by the sanction of the court.

The courts in Alabama and North Carolina have recently held, that where an executor or administrator converted the assets of the estate into confederate money, or confederate bonds, he was not exonerated from accounting for the same upon his final settlement. But those cases are not parallel with this. There the conversion was in funds which had no value outside their territorial limits, and were greatly depreciated there, with a prospect of becoming entirely worthless upon the termination of a civil strife then raging. Here, it was changing one form of money for another, a currency that was variable and fluctuating in its character for one that could suffer no depreciation, that possessed a fixed and permanent standard throughout the habitable globe. Exigencies may arise in which trustees are bound to assume responsibilities in order to protect the trust fund, and although they are held to great strictness in its management, they will not be dealt harshly with, when it appears they have acted in good faith. In the present case the testator in his lifetime turned his ready money largely into gold, which he kept on special deposit on account of his fears of the national currency. The executor did the same thing in regard to his own private affairs, and the most prudent men in the country pursued the same course. The intention was certainly good. In addition to all this the heirs acquiesced after they were all of age, and with a full knowledge of the facts when the accounts were rendered, they not only made no objection, but one of them gave a receipt for his share, thus ratifying the transaction.

Under all these circumstances I think it would be inequitable to charge the executor with the loss, and that the referee decided wrongly.

It is insisted that the heirs should not be allowed to object to the settlement, because the executor had previously rendered them an account covering all the matters in controversy, and they declared that it was satisfactory. But I am not of this opinion. It is true they did assent to it, because they said they wanted no difficulty, but at the same time a dissatisfaction was expressed. This did not preclude them from making their objections at the settlement. The doctrine that a stated account is presumed to be correct when rendered, and objections are not made within a reasonable time, has no application to a case of this kind.

These are all the material questions excepted to. Some minor points have been discussed, but from the facts as found we cannot say that the referee erred in his conclusions. But for the error in charging on the loss of the gold purchase, the judgment should be reversed, and the cause remanded.

All the judges concur.