Ferd. L. Garesché, Administrator, Respondent, *v.* John G. Priest, Executor, Appellant.

### June 22, 1880.

Where an administrator, in good faith, but without an order of court, invests funds in his hands in bonds secured upon a church-building, he will be held liable to the estate for any loss ensuing from the investment, including interest on the fund so invested.

Appeal from the St. Louis Circuit Court, Adams, J. *Affirmed.*

A. J. P. Garesché, for the appellant: Interest is not chargeable as of course, but it depends upon the facts of each case. — *Madden* v. *Madden*, 27 Mo. 546 ; *Clyce* v. *Anderson*, 49 Mo. 43. Damages cannot be recovered against a defendant which the plaintiff could have avoided. — *The State ex rel.* v. *Powell*, 44 Mo. 440 ; *Haysler* v. *Owen*, 61 Mo. 274. An executor will be excused if he exercise ordinary skill and care, and is liable only when he has acted in bad faith. — *Fudge* v. *Dorn*, 51 Mo. 267 ; *Thompson* v. *Brown*, 4 Johns Ch. 619 ; *Knight* v. *Earl*, 3 Atk. 480 ; *The State to use* v. *Meagher*, 44 Mo. 362 ; *Gamble* v. *Gibson*, 59 Mo. 596 ; *Merritt* v. *Merritt*, 62 Mo. 157.

D. T. Jewett, for the respondent, cited : Wag. Stats. 90, sect. 57 ; *Gamble* v. *Gibson*, 59 Mo. 585.

Lewis, P. J., delivered the opinion of the court.

The question involved arises upon exceptions taken to the final settlement made for Daniel G. Taylor, deceased, the defendant's testator, upon his administration of the partnership estate of the St. Louis Sectional Dock Company. In December 1876, Taylor, as such administrator, having in his hands a surplus of about $38,000, invested $10,000 in bonds, at their par value, issued by the St. John's Episcopal Church. These bonds were part of an issue amounting to $25,000 made in 1872, and having five years to run.

They bore interest at ten per cent per annum, payable semi-annually, and secured by a deed of trust with power of sale, and constituting a first lien on the church building, situated on Dolman Street, in the city of St. Louis. At the time of this investment some of the bonds had been paid, so that those remaining unpaid amounted to about $21,600. It appears that the interest was regularly paid until the spring of 1877, and later at only a reduced rate. In the Circuit Court, the exception to the credit taken for these bonds was sustained, and a decree was entered that the respondent recover in money of the appellant the amount paid for the bonds, with interest.

The responsibility of a trustee for an improper or unfortunate investment of trust funds is not to be tested solely by considerations of good faith or purity of motives. Nor will it be sufficient to exonerate him, that he has acted as any ordinarily prudent man might well have done about his own affairs. In most cases, as in the present, there are courts, duly constituted, with jurisdiction to advise or direct the acts of trustees and fiduciary officers in all such matters. Wag. Stats. 90, sect. 57. If an administrator takes it upon himself to ignore the aid which the law has expressly provided to lead him to a safe conclusion, and trusts his own judgment alone, it seems hardly unfair to say that he must abide absolutely by the result, and make his judgment good to the estate, without any regard to the inducements upon which it was formed. The statute above referred to says: " If, on the return of the inventory, or at any other time, it shall appear to the satisfaction of the court that there is a surplus of money in the hands of the executor or administrator that will not be shortly required for the expenses of administration or payment of debts, it shall have discretionary power to order him to lend out the money on such terms and for such time as may be deemed best." It does not appear that the Probate Court was ever consulted about the investment under consideration.

In *Gamble* v. *Gibson*, 59 Mo. 585, the Supreme Court said : " The temptations to tamper with a fund by a trustee are so powerful and so numerous, the hopes of bettering the estate so often prove delusive, that the power of changing the character of the fund is most safely reposed in the discretion of judicial tribunals. This is the invariable rule in reference to converting money into real estate, or real estate into money. There, the character is wholly changed, and it can only be done by delegating the authority in the instrument creating the trust, or in other instances by the sanction of the court." This clear statement of the general doctrine, taken into view with the statute above quoted, would seem to attach to any voluntary investment by an administrator, of surplus funds in real estate securities, all the legal consequences of a wrongful act. If such an act, under any circumstances, prove injurious to the estate, it will be no defence for the administrator that he violated the law in good faith, or that he believed his own judgment and discretion to be better than that to which the law referred him. As there was never any individual liability to pay the bonds, and their only possible value lay in the real estate pledged for them, the investment must, for all the purposes of this case, be treated as a conversion of money into real estate.

The foregoing views of the law necessarily fix upon the administrator a responsibility for any disaster to the estate consequent upon his unauthorized application of its funds. It may be conceded that he acted in the best possible faith, and with the purest motives. But this is not enough. He should have complied with the law. The bonds, though long past due, have never been paid, and cannot now be made available as cash in the hands of the present administrator. He (the present representative of the Sectional Dock Company) has a right to look to the estate of him who made the conversion, for a reconversion of the bonds into cash. But, aside from these views, we are of opinion that

the same responsibility would attach by general principles of chancery jurisprudence, in its dealings with trustees. The result of those principles is perhaps nowhere better stated than in *Clough* v. *Bond*, 2 Myl. & Cr. 496. Lord Cottenham said : "It will be found to be the result of all the best authorities upon the subject, that although a personal representative, acting strictly within the line of his duty, and exercising reasonable care and diligence, will not be responsible for the failure or depreciation of the fund in which any part of the estate may be invested, or for the insolvency or misconduct of any person who may have possessed it, yet if that line of duty be not strictly pursued, and any part of the property be invested by such personal representative in funds or upon securities not authorized, or be put within the control of persons who ought not to be intrusted with it, and a loss be thereby eventually sustained, such personal representative will be liable to make it good, however unexpected the result, however little likely to arise from the course adopted, and however free such conduct may have been from any improper motive."

Let it be admitted that, as a general rule, loans upon suitable real estate security are among the safest that can be made, and second only, if to any other, to an investment in government securities. Still, it is not real estate, as such, that is to be regarded ; nor can a formal compliance with the letter of the law excuse a substantial breach of it. Money may be lent upon real estate which is so situated as to give nothing of the stability ordinarily implied in that form of security ; while, on the other hand, the capability of conversion into other forms of property is an essential element of value. The holder of inconvertible property must depend wholly on those rare chances of sale whose very rarity induces fluctuation and introduces the obnoxious element of speculation. Another important purpose in every prudent investment is to obtain an income, while pre-

serving the principal. Bonds bearing interest may promise an income, but they cannot assure it, where the only security behind them is without a revenue.

The testimony in this case about the value of the church building and the lot on which it stood was far from satisfactory. The evidence as to the cost of the building had little, if anything, to do with the matter of inquiry. The elements which go to make up an established value, in legal contemplation, were hardly recognizable in any of the testimony. The property was in a neighborhood where neither the building nor the land would be desirable for ordinary purposes. The building might be used by almost any church denomination, but no denomination appears to have wanted one at that place. In short, there was no demand in the market for churches so situated. The property yielded no income whatever. Voluntary contributions by the members of a religious society largely in debt, and even the offerings of a reverential affection for the place of habitual worship, tendered in order to save it from alienation or sacrifice, can only be regarded in law as mere possibilities, and not to be taken into an estimate like the favoring chances of trade. A risk of trust funds upon such property by way of security is not of the sort which we find to have been sanctioned by the authorities. No case presents itself which is precisely similar to this in its facts; yet, upon the principles which have guided courts of equity in determining the question of liability in corresponding cases, we think it clear that the defendant's testator cannot be exonerated. *Ackerman* v. *Emott*, 4 Barb. 626; *Morris* v. *Wallace*, 3 Pa. St. 319; *Worrell's Appeal*, 9 Pa. St. 508; *s. c.* 23 Pa. St. 44; *Hemphill's Appeal*, 18 Pa. St. 303; *Bogart* v. *Van Velsor*, 4 Edw. Ch. 718.

The court below properly charged the estate with interest. It was the duty of the administrator to invest the fund, and if he had done so in a proper way, interest, presumably, would

have accrued. It is not to be assumed that there was no alternative between the investment made and a failure to invest at all.

The judgment is affirmed. All the judges concur.