José María y Juan Franceschi, Domingo, Salvador y Estrella Leandri y Angel y Blanca Massari, peticionarios, v. La Corte de Distrito de Ponce, Hon. Domingo Sepúlveda, Juez, y López de Tord & Zayas Pizarro, demandados.

No. 898.—*Sometido:* Mayo 6, 1933. *Resuelto:* Noviembre 7, 1933.

*Henry G. Molina* y *M. León Parra,* abogados de los peticionarios; *López de Tord & Zayas Pizarro,* por su propio derecho.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En 18 de junio de 1928 los albaceas testamentarios de Francisco María Franceschi solicitaron de la Corte de Distrito de Ponce la administración de todo el caudal de dicho causante. En virtud de esta petición se nombraron por la corte administradores judiciales interinos, y en 12 de diciembre de 1928, declarada con lugar la solicitud de administración judicial, se nombraron los administradores judiciales permanentes.

Alegan los peticionarios que la corte de distrito *motu proprio,* en mayo 17 de 1932, ordenó a los interesados que mostraran causa del porqué no debería terminarse la administración judicial y que en la vista celebrada en mayo 19 del mismo año se resolvió por la corte que se procediera lo antes posible a hacer la partición de los bienes y que los señores López de Tord y Zayas Pizarro presentaran su cuenta a la sucesión lo antes posible, así como el Sr. Parra Capó, que fué abogado también. En agosto 17 de 1932 los peticio-

narios radicaron una moción ante la corte inferior solicitando la terminación de la administración judicial. La vista de esta moción tuvo lugar el 24 del mencionado mes, y en 2 de marzo de 1933 la Corte de Distrito de Ponce declaró sin lugar la referida moción. Alegan además los peticionarios que los Sres. López de Tord y Zayas Pizarro están reclamando dentro del procedimiento de administración judicial honorarios en una suma total de $125,000 por sus servicios profesionales por un período de más de cuatro años, prestados ho tan sólo en dicha administración judicial, sino en numerosos pleitos y que como consecuencia de esa reclamación dichos abogados se han opuesto a que se les entregue a los peticionarios su caudal hereditario consistente en bienes cuyo valor actual no baja de $400,000.

En la resolución de la corte declarando sin lugar en todas sus partes la moción de los herederos sobre terminación de la administración judicial y entrega de bienes se dice, entre otras cosas, lo siguiente:

."En, efecto, lo que interesan los herederos en su moción es que la Corte dé por terminada la administración judicial y ordene la entrega de los bienes a los herederos; es decir, lo que solicitan, en sustancia, es que la Corte dicte el auto definitivo a que se refiere el artículo 59, y lo ponga en ejecución.

"Pero, para que la Corte pudiera dictar ese auto definitivo y ordenar la entrega de los bienes a los herederos, sería necesario que se hubiesen, cumplido todos los siguientes requisitos:

"1ro. Que el Administrador Judicial hubiera terminado la liquidación de los bienes (Artículo 55 de la Ley de Procedimientos Legales Especiales) ;

"2do. Que el administrador judicial hubiera presentado la cuenta final (Artículo 55 L. P. L. E.) ; y

3ro. Que se hubiesen satisfecho las deudas del finado y se hubiesen cubierto los gastos de la administración. (Art. 59, supra.)

"Sin haberse alegado y probado todos los requisitos antes especificados no puede la Corte declarar con lugar la moción de los herederos.

"En la misma moción de los herederos aparecen alegados, y son hechos probados, los siguientes:

"Que existen, pendientes, una reclamación del Doctor Alejandro Montalvo, por servicios profesionales (deudas del finado) y otra reclamación de los señores López de Tord y Zayas Pizarro, por sus servicios como abogados de los administradores judiciales, de los albaceas testamentarios y de los herederos peticionarios (gastos de la administración.)

"No se ha alegado ni se ha probado que el Administrador Judicial haya presentado su cuenta final."

Alegan los peticionarios que la corte inferior cometió error al resolver la existencia de un *lien* a favor de los abogados en el caudal de la herencia. Entienden los abogados opositores López de Tord y Zayas Pizarro que la resolución de la corte inferior tiene el alcance de reconocerle un *lien* sobre los bienes del caudal hereditario. Agregan que los jueces de la Corte de Distrito de Ponce han resuelto que dichos abogados tienen derecho a retener todos los documentos y valores de la Sucesión Franceschi. No tiene el alcance que se le atribuye la resolución de la corte inferior sobre esta moción, que se limita a considerar como gastos de administración los servicios profesionales prestados por los abogados.

Tampoco se trata en este caso de un derecho de retención, porque los bienes de la herencia no están en posesión de los abogados y sí bajo el control judicial. Cualquiera que sea el criterio que en definitiva pueda mantener esta corte acerca del derecho de retención (*retaining lien*) o del derecho que en la jurisprudencia angloamericana se conoce con el nombre de *charging lien,* la verdad es que esta cuestión no fué decidida por la corte inferior al resolver la moción sobre terminación de administración judicial y que no es necesario resolverla, si llegamos a la conclusión de que los honorarios de abogado constituyen gastos de administración. No queremos, sin embargo, pasar por alto lo que dice el Juez Brannon, hablando a nombre de la corte, en el caso de *Fowler* v. *Lewis' Admr.,* 14 S. E. 457, sobre los bienes de la herencia cuando

están en administración judicial. De la opinión de la corte en este caso copiamos lo siguiente:

"No puedo estar conforme con que se establezca la doctrina de que cuando un fondo pertenece a una herencia, simplemente porque ésta se halle en poder y bajo la autoridad de la corte, deban pagarse de ella los honorarios de todos los abogados—los de la parte demandante y los de la demandada— relacionados con el caso. Si los bienes de un causante están bajo la jurisdicción del tribunal, ¿se permitirá a los abogados que hayan defendido a la sucesión contra algunas reclamaciones, que cobren crecidos honorarios como un gravamen sobre el activo? No sé que exista ley autorizando eso. Estableced la práctica y se abrirán de par en par las puertas a la demanda de honorarios exorbitantes, a la ruina de las herencias—privando a las viudas y a los niños de dineros que debieran sostenerlos y confortarlos. Algunos testigos fijarían el valor de los servicios en números elevados; otros en menos. La corte concede una compensación fuerte. Raras veces podría una corte de apelación remediarlo. Si, simplemente porque un fondo esté en poder de la corte, se pueden hacer esas concesiones arbitrarias contra los bienes relictos por un causante, ¿por qué en todo caso de ejecución de sentencias o de gravámenes hipotecarios no puede declararse un gravamen a favor de los abogados que impugnan aquellas cargas? ¿Ha prevalecido esa práctica alguna vez en Virginia? No puedo estar de acuerdo con que se introduzca la innovación por mera actuación judicial. El abogado es competente para velar por sus intereses. Si no cree segura su compensación puede negarse a prestar sus servicios. Si los presta, que haga su contrato y se proteja a sí mismo. Si la ley en su estado actual no es suficiente, a la legislatura que haga las reglas adecuadas, según sucede en Inglaterra y en muchos de nuestros estados. Ciertamente que yo estoy dispuesto a ser razonablemente liberal con mi propia profesión, pero no en sacrificio de los intereses de los demás. No creo que ello sería beneficioso para esa honorable profesión, en que figuran los hombres más brillantes y prominentes de la sociedad, a quienes el público confía sus más vitales, sagrados y caros intereses, privados y públicos; sino que al fin y al cabo llevaría al foro a la pérdida de su reputación y a la impopularidad, merced al uso impropio y veraz que frecuentemente harían de la regla los miembros menos meritorios. Sabemos que se ha convertido en un abuso dondequiera que ha imperado. La Corte Suprema de los Estados Unidos, en el caso de Trustees v. Greenough, 105 U.S. 527, condena la práctica, ahora prevalente, de conceder crecidos honorarios a ser pagados

de fondos en fideicomiso, y el Juez Asociado Sr. Miller disintió en el mismo caso y la calificó de 'un craso abuso judicial de hogaño, cual es la absorción de una propiedad o de un fondo que viene a poder de la corte, mediante concesiones de honorarios de abogado y de otros gastos.''

Los abogados de los herederos alegan que la corte inferior incurrió en error al resolver ''que la reclamación de honorarios por servicios a los herederos independientes al juicio de testamentaría'' era un gasto de administración. Los peticionarios establecen una distinción entre los servicios profesionales rendidos al administrador y los prestados a los herederos, y dicen que los primeros pueden ser cargados como gastos de administración y deben ser comprendidos en la reclamación del administrador, mientras que los honorarios por servicios a los herederos no pueden ser fijados dentro del procedimiento de administración judicial, o ser obstáculo a que esta administración termine. No hay duda alguna de que la corte de distrito tiene jurisdicción para decretar los honorarios que deben pagarse a los abogados por servicios prestados a la administración. De acuerdo con el título I, capítulo 7, de la Ley de Procedimientos Legales Especiales, los gastos de reparación y cultivo, de contribuciones, de pleito, y demás atenciones ordinarias de la administración, corren a cuenta de la misma. El artículo 41 de la Ley citada dispone que para dichos gastos, los de pleito y demás atenciones ordinarias de administración, podrá el juez disponer que retenga el administrador una cantidad suficiente o mandarla pagar del depósito, si no pudiera cubrirlos con los ingresos ordinarios. Entre los gastos de pleito, que expresamente se mencionan por la ley como gastos de administración, consideramos incluídos los servicios de abogados legalmente utilizados por la administración judicial. El artículo 53 de la ley referida autoriza a la corte para disponer que se abonen al administrador o albacea los gastos indispensables que ocasione la administración, incluso el costo de los anuncios y publicaciones que la ley prescribe, la conservación y guarda

de los bienes, consulta de abogado y gastos de viaje. De manera que no hay duda, a nuestro juicio, de que la corte tiene facultades concedidas expresamente por la ley para cubrir los servicios profesionales de un abogado prestados a la administración judicial.

En el caso de *Carpenter* v. *Hazel*, 194 S. W. 225, la Corte Suprema de Arkansas dijo:

"Una cantidad pagada a un abogado encargado de litigación para el beneficio de una herencia, es una parte de los gastos de administración y el pago de dicha cantidad es una distribución de una parte de los bienes de la herencia. Es necesariamente una parte de la jurisdicción de la corte que entiende en la administración (*probate court*), la cual es exclusiva sobre dicho objeto sin que otra corte pueda invadir tal jurisdicción."

En el caso de *Nichols* v. *Reyburn*, 55 Mo. A. 4, la Corte de Apelaciones de St. Louis y Kansas City se expresó así:

"En principio la contestación adecuada a la primera pregunta debe depender de la naturaleza del contrato que el abogado hace en estos casos. El administrador es un mero agente de la sucesión. La regla general es que, cuando un agente contrata para un principal conocido, y actúa dentro de las atribuciones de su cargo, el principal, y no el agente, es responsable de lo pactado. Sin embargo, esta regla tiene sus excepciones, una de las cuales es reconocida en el caso de Hovey v. Pitcher, 13 Mo. 192, en el sentido de que cuando se extiende crédito al agente, éste puede ser demandado personalmente. La sección 92 de los Estatutos Revisados de 1899, declara que será deber del administrador defender todos los pleitos que contra él se entablen siempre que sea necesario en el curso de la administración. La sección 222 dispone que la corte concederá al administrador, en la liquidación, una cantidad razonable para consultas y servicios de abogado. Desde la época del caso de Gamble v. Gibson, 59 Mo. 585, se ha resuelto que un albacea podía obligar a la sucesión por el valor de servicios legales necesarios, prestados por otro a la herencia, a su requerimiento. Esas partidas son gastos de administración, y de ser razonables, deben ser concedidas por la corte contra la herencia y deducidas del activo de ésta en poder del síndico estatutorio.

"Siendo tal la ley, resolvemos que al contratar un abogado sus servicios profesionales con un administrador, contrata prima facie a base del crédito de tanto el agente como el principal. El agente le

es responsable hasta el límite del contrato que hace, independientemente de si es razonable o no, o si es para beneficio de la herencia o no; la sucesión le es responsable del valor razonable de sus servicios, prestados en beneficio de ella.''

Arguyen los peticionarios que si hemos de seguir la jurisprudencia americana, la herencia no es directamente responsable por los honorarios de abogado del administrador. El caso de Missouri que acabamos de citar sienta, a nuestro juicio, la doctrina que debemos seguir en Puerto Rico. Tampoco opinamos que la reclamación por honorarios de abogado deba estar necesariamente incluída en las cuentas del administrador.

En el caso de *U. S. Fidelity & Guaranty Co.* v. *People,* 98 Pac. 833, la Corte Suprema de Colorado en una laboriosa opinión sostiene la doctrina que parece más razonable y justa sobre esta misma cuestión. De la opinión emitida por la corte en dicho caso copiamos lo siguiente:

''Al decidir esta parte del caso, nosotros simplemente sostenemos que bajo los estatutos de Colorado anteriormente referidos, que todavía existen sustancialmente en la misma forma, la sucesión es primariamente responsable de los gastos razonables legalmente incurridos en la administración y arreglo definitivo de la herencia y que la corte del condado tiene jurisdicción para permitir directamente al reclamante su demanda y ordenar al administrador el pago de la misma, observando desde luego la clasificación y requisitos del estatuto al hacerlo así. Nuestro punto de vista es que al contratar tales gastos el administrador actúa a nombre de la sucesión y en su capacidad oficial, y no individual o privadamente, y ello es así ya comparezca dicho funcionario ante la corte para obtener su autorización antes de incurrir en responsabilidad o tome el riesgo de su subsiguiente aprobación. No sostenemos nosotros que tales gastos no puedan ser liquidados mediante pagos al administrador. Cuando él realmente anticipe la cantidad, este curso es necesario, y cuando el administrador y el reclamante, por contrato o de otra manera, convienen el montante, y el último está conforme, no hay razón para que no se incluya en el informe del primero una cantidad para el reclamante. La práctica de sufragar estos gastos al administrador es amenudo conveniente y deseable. Ha sido seguida frecuentemente en este estado, y

lo que nosotros decimos no debe interpretarse en el sentido de desalentar su continuación cuando resulta adecuada y practicable.''

Conviene aclarar que en el caso anteriormente citado se alegó específicamente que los honorarios de abogado solamente podían ser cobrados a través del administrador, es decir, que se trataba de una reclamación contra dicho administrador y no contra la herencia, y que el abogado ha debido dirigirse al oficial mencionado a fin de que éste procurara el reembolso de los honorarios que le fueran satisfechos.

■ A juicio de los peticionarios los honorarios devengados por servicios profesionales prestados a los herederos constituyen una obligación de dichos herederos y no de la herencia y no pueden ser reclamados por el procedimiento sumario mediante una moción dentro del juicio de testamentaría. Opinamos que los gastos de administración, entre los cuales están incluídos los honorarios de abogado, pueden ser resueltos sumariamente mediante moción en el mismo procedimiento de administración. La Corte Suprema de Apelaciones de West Virginia en el caso de *Jacobs* v. *Jacobs,* 131 S. E. 455, sostiene que los honorarios de abogado por servicios prestados a la administración judicial son por lo regular reclamados informalmente mediante solicitud o moción, según ha sido establecido por numerosas decisiones de dicho tribunal.

■■ En cuanto a la distinción que tratan de establecer los peticionarios sobre servicios prestados a los herederos y servicios prestados al administrador, debemos hacer constar que en nuestro sentir, los servicios prestados por los abogados en pleitos que los herederos o el administrador hayan tenido que promover contra otras personas en reclamación de bienes o derechos que pertenezcan a la testamentaría, constituyen servicios prestados a la herencia y a la administración judicial. Lo mismo decimos con respecto a servicios prestados en defensa del caudal hereditario.

El abogado de los peticionarios basa su contención en que,

de acuerdo con la jurisprudencia sentada por este tribunal en el caso de *Pérez, Administrador Judicial,* v. *Seda,* 35 D.P. R. 329, en los abintestatos la continuación de la personalidad del causante por el administrador está limitada únicamente al período que medie desde el fallecimiento hasta la declaración de herederos. Toda vez que las acciones deben entablarse a nombre de los herederos, se arguye por los peticionarios que son ellos y no la herencia los responsables por los servicios profesionales de los abogados. No creemos acertado este criterio. Los pleitos que versan sobre derechos y bienes pertenecientes a la herencia deben considerarse como pleitos de la administración judicial. Tampoco creemos que deba extremarse demasiado la distinción que se establece entre las atribuciones del administrador y los herederos en lo que respecta a la representación de la herencia. La opinión emitida por este tribunal no es óbice para que se aclare y amplíe el aspecto legal de esta cuestión, si se tiene en cuenta que el artículo 51 de la Ley de Procedimientos Legales Especiales no es idéntico al artículo 1008 de la Ley de Enjuiciamiento Civil Española, comentado por Manresa, que se refiere exclusivamente a la sucesión intestada y que expresamente determina que el administrador tendrá la representación del abintestato hasta que se haga la declaración de herederos por sentencia firme. Este artículo no se aplica a la testamentaría, puesto que en ellas consta quiénes son los herederos. Estas limitaciones no aparecen en el artículo 51 de nuestra Ley de Procedimientos Legales Especiales, aplicable, lo mismo al abintestato que al juicio de testamentaría. Dicho artículo dice así:

"Será deber de los administradores y mientras éstos se nombren, de los albaceas, representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte, y los que se promovieran después por o contra el caudal de la herencia. Las acciones o procedimientos instituídos por o contra el finado se suspenderán a su muerte ínterin se haga cargo el albacea o se nombre un administrador y el albacea o administrador quedará subrogado como parte en la acción."

Hemos dicho que el administrador judicial representará al finado en todos los pleitos que se promuevan en pro o en contra de la herencia, ínterin recaiga la declaración de here· deros, los cuales tendrán desde entonces dicha representa· ción, y aclaramos y ampliamos el alcance de nuestra decisión, haciendo constar que los herederos no adquieren una repre- sentación exclusiva y que el administrador judicial, en virtud de la representación que expresamente le confiere la ley, y los herederos como partes realmente interesadas, deben actuar conjuntamente en todos los litigios que se promuevan en favor o en contra del caudal hereditario.

Si entre los servicios prestados por los Sres. López de Tord y Zayas Pizarro hay algunos que no corresponden a la administración judicial, es cosa que debe ser resuelta en primera instancia por la corte inferior, donde deben señalarse los pleitos o servicios que se consideren extraños a dicha ad- ministración.

El primer fundamento aducido por la corte infe- rior para negar la terminación de la administración judicial es que no se ha cumplido con el requisito de que el adminis- trador judicial haya terminado la liquidación de los bienes de acuerdo con el artículo 55 de la Ley de Procedimientos Legales Especiales. El artículo referido, dice, en lo perti- nente, como sigue:

"Cuando el albacea o administrador haya terminado la liquidación de los bienes, renuncie o sea separado, o por cualquier otra causa cese en el desempeño de su cargo, deberá presentar a la corte una cuenta final jurada, y acompañada de los recibos y resguardos correspondien- tes, la cual también se pondrá de manifiesto para su inspección."

A nuestro juicio, cuando se han pagado los legados y las deudas reconocidas, o han sido afianzados los acreedores reco- nocidos como tales que estableciesen oposición a la termina- ción de la administración judicial, los herederos, como dueños legítimos del caudal hereditario, podrán solicitar y obtener a través de la corte que el administrador rinda su cuenta final. La corte puede actuar sumariamente y obligar a dicho

funcionario a que proceda sin dilaciones a cumplir con este deber.

No hay duda alguna de que los legados han sido satisfechos y que las deudas reconocidas han sido cubiertas. Así lo admiten las partes, salvo la alegación de los abogados de que aun no se han pagado sus honorarios. Así debemos asumirlo también, teniendo en cuenta que allá por el mes de junio de 1928 se solicitó y se decretó por la corte inferior el nombramiento de un contador partidor para proceder a la distribución de los bienes de la herencia. Es de suponerse que la corte nombró este contador, ajustándose al artículo 67 de la Ley de Procedimientos Legales Especiales, según el cual cuando un albacea o administrador estuviere en posesión de todo el caudal, y hubiese satisfecho o tuviese en su poder bienes bastantes para satisfacer las deudas y gastos de la administración, deberá pedir a la corte de distrito el nombramiento de un contador para practicar la división de la herencia. Si no hay problema alguno pendiente con respecto a los legados y las deudas reconocidas, y los herederos no quieren proceder a la partición del caudal hereditario, ¿que queda entonces por hacer? A nuestro juicio la rendición de la cuenta final del administrador, que no debe ser obstáculo para que los herederos entren en la posesión de sus bienes, ya que la corte puede adoptar medidas para acelerar el procedimiento y dejar cubiertos los referidos gastos, entre los cuales consideramos incluídos los honorarios de abogado. El artículo 71 de la Ley de Procedimientos Legales Especiales dispone, entre otras cosas, que cuando los herederos, siendo todos mayores de edad, hubiesen manifestado a la corte que están acordes respecto a la partición o división de la herencia, se les hará entrega inmediata de los bienes hereditarios por el albacea o administrador en cuyo poder se hallen. Así debe hacerse cuando los herederos están de acuerdo con respecto a la partición y división de la herencia, y así debe hacerse también cuando no hay desacuerdo entre ellos y desean obtener la posesión proindivisa del caudal hereditario sin pro-

ceder a su inmediata distribución, ya que la corte en estas condiciones no puede negarse a que la propiedad pase a poder de sus legítimos dueños.

El artículo 59 de la Ley de Procedimientos Legales Especiales citado por la corte inferior en apoyo de su contención dice que el auto definitivo dispondrá la adjudicación del sobrante después de satisfacerse las deudas del finado y cubiertos los gastos de la administración. Es claro, a juicio nuestro, que la ley se refiere a deudas reconocidas, y no a todas las reclamaciones que puedan establecerse contra el caudal común. Si así fuera, cualquier reclamación, judicial o extrajudicial, por caprichosa que resultase, bastaría para impedir indefinidamente la terminación de una administración judicial. No puede ser éste el propósito de la ley. De acuerdo con el artículo 23 de la Ley de Procedimientos Legales Especiales, los acreedores con derecho a solicitar la administración judicial de los bienes de un finado son aquéllos con título escrito no asegurado que tuvieren algún crédito contra la persona finada. Aplicando el mismo principio, parece natural que no tengan derecho a impedir que termine la administración judicial aquellos acreedores que tampoco pudieran solicitarla.

El artículo 973 de la Ley de Enjuiciamiento Civil española dice, en su inciso tercero, que podrá prevenirse el juicio de abintestato a instancia de los acreedores que presenten un título escrito que justifique cumplidamente su crédito y no lo tengan asegurado con hipoteca u otra garantía. Comentando este artículo dice el comentarista señor Manresa:

"Para que éstos puedan ser considerados como parte legítima para promover el abintestato, es indispensable, según el Núm. 3º. del art. 973, que concurran conjuntamente dos requisitos: 1ro., que presenten un título escrito que justifique cumplidamente su crédito; y 2do. que no tengan asegurado el crédito con hipoteca u otra garantía. El derecho de los acreedores es preferente al de los herederos sobre los bienes de la herencia, y por el interés que tienen en que éstos no desaparezcan, es justo concederles en el abintestado la misma intervención que se concede a los presuntos herederos, ya sea de oficio o forzosa

la prevención, ya voluntaria o a instancia de parte, por las mismas razones expuestas anteriormente. Mas la ley no concede ese derecho a todos los acreedores, sino tan sólo a los que reúnan los dos requisitos antes indicados, porque no sería justo permitir que a título de acreedor, y sin justificarlo, se entremetiese un extraño a gestionar en el abintestado, perturbando la paz de las familias y causando gastos y vejaciones en perjuicio de los herederos legítimos.

"En cuanto al primer requisito, nótese que la ley exige que el título sea *escrito* y que con él se justifique *cumplidamente* el crédito. Que se hallan en este caso las sentencias firmes, lo convenido en acto de conciliación y todos los documentos que, según el artículo 1429, tienen aparejada ejecución, es indudable. También es *escrito* un pagaré u otro documento privado; mas, como no sirve para justificar *cumplidamente* el crédito si no ha sido reconocido judicialmente, y este reconocimiento ya no puede hacerlo el deudor por haber fallecido, no podrá ser admitido ese acreedor a ser parte legítima en el abintestato, aunque ofrezca justificar la certeza de la deuda, porque, según el art. 974, esta justificación ha de hacerse conforme al 973, el cual exige que se haga presentando un título escrito que justifique cumplidamente el crédito. (Véase la sentencia del Tribunal Supremo de 20 de abril de 1891.)"

El artículo 1035 del Código Civil (edición 1930), equivalente al artículo 1082 del Código Civil español, dice que los acreedores reconocidos como tales podrán oponerse a que se lleve a efecto la partición de la herencia hasta que se les pague o afiance el importe de su crédito. Interpretando este artículo en armonía con la disposición de que únicamente el acreedor con título escrito no asegurado podrá solicitar la administración judicial, bien puede llegarse a la conclusión de que sólo pueden oponerse a la terminación de la misma los acreedores reconocidos como tales hasta que se les pague o afiance el importe de sus créditos. Comentando Scaevola el artículo 1082 del Código Civil español dice así:

"Serán, pues, según dicho artículo, acreedores reconocidos como tales y en condición de oponerse a la práctica de la partición, si no se cumple la condicional última que prevé el art. 1082, los que tengan sus créditos consignados: en escritura pública, con tal que sea primera copia, o, si es segunda, que esté dada en virtud de mandamiento judicial, y con citación de la persona a quien deba perjudicar

o su causante (en nuestro caso, hasta de los herederos del difunto); en documento privado; siempre que haya sido reconocido bajo juramento ante Juez competente para despachar la ejecución por el causante de la herencia o por sus sucesores; en confesión hecha ante el Juez competente; en letras de cambio, y sin necesidad de reconocimiento judicial, respecto al aceptante, que no hubiere puesto tacha de falsedad a su aceptación, al tiempo de protestar la letra por falta de pago; en cualesquiera títulos al portador, o nominativos, legítimamente emitidos, que representen obligaciones vencidas, y en los cupones también vencidos de dichos títulos, siempre que los cupones confronten con los títulos, y éstos, en todo caso, con los libros talonarios; y por último, en las pólizas originales de contratos celebrados con intervención de agente de Bolsa o corredor público, que estén firmadas por los contratantes y por el mismo agente o corredor que intervino en el contrato, con tal de que se comprueben, en virtud de mandamiento judicial y con citación contraria, con su registro, y éste se halle arreglado a las prescripciones de la ley.

"Por analogía a lo que determina la sentencia de 2 de diciembre de 1885, y según la cual no están facultados para promover el juicio de testamentaría los acreedores cuyo crédito sea condicional y no pueda desde luego reclamarse, tampoco tendrán derecho a ejercitar el recurso que regula el art. 1082; porque se dan en ambos casos las propias razones, que deben llevar, por tanto, a idéntica solución legal."

La corte inferior en su resolución cita dos reclamaciones contra el caudal hereditario, una del Dr. Montalvo y otra de los abogados López de Tord y Zayas Pizarro. En cuanto a la primera, no consta que figure entre las deudas reconocidas ni que se haya establecido oposición alguna a la terminación de la administración judicial, y en cuanto a la segunda, ya hemos declarado que los servicios profesionales prestados a la administración constituyen gastos de la misma.

En este caso, en que se han pagado los legados y las deudas reconocidas han quedado satisfechas, los herederos, a quienes ampara el dominio sobre los bienes hereditarios, tienen derecho a su posesión y disfrute y es deber de la corte reconocerles este derecho. Las partes realmente interesadas están conformes en dar fin a esta prolongada administración judicial. Unicamente existe la oposición de los Sres. López de

Tord y Zayas Pizarro, quienes entienden que deben pagarse sus honorarios antes que la propiedad pase a poder de sus legítimos dueños. Hasta la fecha se ha pagado a los abogados la suma de $28,000 por sus servicios profesionales, amén de $10,000 aproximadamente por desembolsos que los herederos incluyen como honorarios y que los abogados descartan al valorar sus servicios, porque, según alegan, se tomaron, por convenio con dichos herederos, para el pago de trabajos taquigráficos en todos los escritos que hubiera necesidad de preparar en sus oficinas, a razón del 20 por ciento por cada folio original, y para sellos, viajes y otros gastos de administración. Habida cuenta de la suma facilitada, no puede saberse si existe o no un crédito a favor de los abogados, hasta tanto no se haya fijado por la corte de distrito el valor de los servicios profesionales.

Si para llegar a una conclusión definitiva la corte inferior necesitase algún tiempo, entonces, haciendo uso de su poder discrecional, puede adoptar medidas para asegurar el pago de dichos servicios profesionales. Los herederos, en la moción que presentaron en 17 de agosto de 1932, ante la corte inferior, reclamaron los bienes de la herencia "bajo la condición de satisfacer las cantidades que la corte pudiera condenarles a pagar por los honorarios de los Sres. López de Tord y Zayas Pizarro." Afirman dichos herederos que en audiencia pública hicieron constar que si la corte creía que no debía accederse a lo solicitado sino mediante prestación de fianza, los peticionarios estaban dispuestos a radicar una buena y suficiente fianza por la suma que la corte creyera necesaria para garantizar el pago de todas cuantas reclamaciones quedaban pendientes contra el caudal hereditario, contra el administrador judicial o contra los peticionarios o cualquiera de ellos.

Claramente se ve que los herederos ofrecen a la corte las garantías razonables que ésta pueda exigir. La corte, a nuestro juicio, tiene facultad para adoptar cualquier resolución equitativa y justa que garantice y proteja los derechos

de las partes. El caudal hereditario está bajo su control y el administrador, que es un funcionario de la corte, tiene el deber de obedecer sus órdenes y decretos.

La Corte Suprema de los Estados Unidos, en el caso de *Bosworth* v. *Terminal R'D Ass'n.*, 174 U. S. 189, se expresó así:

"Es una práctica común en las cortes de equidad, ansiosas como están de ser relevadas del cuidado de la propiedad, entregarla a las partes que tienen derecho a ella, aun antes de la solución final de todas las reclamaciones, y al mismo tiempo dejar al síndico la defensa ulterior de la misma, compremetiéndose la parte que recibe la propiedad a ceptar cualquier decreto que pueda finalmente ser dictado contra el caudal."

El artículo 59 de la Ley de Procedimientos Legales Especiales dice que el auto definitivo dispondrá la adjudicación del sobrante entre las personas con derecho a ello, después de satisfechas las deudas del finado y cubiertos los gastos de la administración. "Satisfacer", según el Diccionario de la Real Academia, significa "pagar enteramente lo que se debe." "Cubrir", significa "pagar o satisfacer una deuda o alcance, gastos, etc.—Cautelarse de cualquiera responsabilidad, riesgo o perjuicio." Entendemos que los propósitos del estatuto quedan cumplidos si la corte, en caso de que tenga que tomarse algún tiempo para fijar la cuantía de los honorarios, exige, mientras resuelve si se debe pagar o no una suma adicional, la garantía que considere suficiente y razonable bajo la condición de que los herederos aceptarán y obedecerán la sentencia que finalmente se dicte, y harán efectiva inmediatamente cualquier cantidad que se les condene a pagar. Una vez prestadas las debidas garantías, la corte debe requerir perentoriamente al administrador judicial para que rinda su cuenta final y dictar el auto correspondiente.

*Por las razones expuestas debe anularse la orden dictada por la Corte de Distrito de Ponce en 2 de marzo de 1933, y devolverse el caso a dicha corte para procedimientos ulteriores de acuerdo con los términos de esta opinión.*