El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
En esta ocasión este Tribunal tiene dos controversias que resolver. La primera es establecer quién sustituye a un causante en un pleito de reivindicación de bienes que éste, por conducto de su tutor, instara en vida contra dos de sus herederas. En específico, debemos resolver si procede el nombramiento de un administrador judicial para que re-presente a la comunidad hereditaria en ese pleito y para que administre la sucesión. La segunda es auscultar cuál es el trámite procesal adecuado en un pleito de expedición de cartas testamentarias a favor de una albacea, cuando existe oposición a que las cartas se expidan.
I
Don Juan A. Vilanova Díaz procreó en su primer matri-monio con la Sra. Gloria Hernández cinco hijos: Sonia Maritza, Ricardo Adolfo, Ivonne Catherine, Diana Gloria y Sylvia Margarita, todos de apellidos Vilanova Hernández. En un matrimonio posterior con la Sra. Iris B. Serrano *832 Cruz procreó otra hija llamada Diana V. Vilanova Serrano. Asimismo, en una relación extramarital con la Sra. Annie Román Crespo procreó una última hija llamada Annie Vi-lanova Román.
El causante otorgó testamento abierto el 23 de junio de 1994 ante el notario Eduardo R. Guzmán Valiente. Insti-tuyó como herederos a sus siete hijos y a su esposa Iris B. Serrano Cruz. Designó como albacea y contadora partidora a su hija Diana V. Vilanova Serrano. Como albacea susti-tuta, nombró a su esposa Iris B. Serrano Cruz. En la even-tualidad de que ambas resultaran incapaces de desempe-ñar el cargo, el testador nombró albacea al Banco Santander Puerto Rico.
Años más tarde, el 12 de diciembre de 2002, el causante fue declarado incapaz por el Tribunal de Primera Instan-cia, Sala de Bayamón. Luego de ciertos trámites, el tribunal designó como tutora del señor Vilanova Díaz a su hija Sonia Maritza Vilanova Hernández.
Del análisis de una investigación realizada surgió, se-gún se alega, que la esposa del señor Vilanova Díaz, la señora Serrano Cruz y la hija de ambos, Diana V. Vilanova Serrano, en unión con otras personas se dedicaron durante años a utilizar, disponer, dilapidar y apropiarse indebida y sistemáticamente de los bienes personales y privativos del señor Vilanova Díaz mediante maquinaciones insidiosas, mecanismos legales nulos o de dudosa legalidad y transac-ciones financieras fraudulentas, todo lo cual ocasionó cuan-tiosas pérdidas económicas.
Por tal razón, el 26 de enero de 2006 la Sra. Sonia Maritza Vilanova Hernández, en su capacidad de tutora del señor Vilanova Díaz, presentó una demanda contra la es-posa de éste (la señora Serrano Cruz), la señora Vilanova Serrano, Allmerica Financial Life Insurance & Annuity Company (Allmerica) y Miguel A. Rivera Rivera, entre otros. Se le imputó a la señora Serrano Cruz y a la señora *833 Vilanova Serrano disponer, dilapidar y apropiarse indebida y sistemáticamente de los bienes del señor Vilanova Díaz.
En esa demanda se incluyeron como demandantes a las corporaciones Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc., y Vilco Chemicals, Inc., de las cuales el señor Vilanova Díaz era accionista.
El 23 de noviembre de 2007, durante el transcurso del pleito, el señor Vilanova Díaz falleció. Pocos días después, la hasta entonces tutora Sonia Maritza Vilanova Hernán-dez, presentó una “Moción informando fallecimiento y soli-citud de orden”. El 3 de diciembre de 2007 y a solicitud de la señora Vilanova Serrano, el Tribunal de Primera Instan-cia emitió una resolución en la que ordenó la paralización de los procedimientos. Ordenó, además, que se procediera con la sustitución de parte.
El 11 de diciembre de 2007 Allmerica consignó en el tribunal $8,336,515.74 en pago de los beneficios por muerte por la póliza de seguro de vida y la anualidad del señor Vilanova Díaz. El Tribunal de Primera Instancia aceptó la consignación. Luego de la presentación de varias mociones de sustitución de parte y de otros escritos presen-tados por ambas partes, el 6 de febrero de 2008 el Tribunal de Primera Instancia dictó una orden en la que declaró “con lugar” la moción. Mediante esta autorizó la sustitu-ción del causante por los hermanos Vilanova Hernández y Vilanova Román. Además, dispuso que se presentase una demanda enmendada en treinta días.
El 8 de febrero de 2008, la señora Vilanova Serrano pre-sentó una moción en la que hizo constar su oposición a la sustitución solicitada por los hermanos Vilanova Hernán-dez y Vilanova Román. Argumentó que la sustitución le correspondía a ella como albacea testamentaria, en confor-midad con el Art. 584 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2471.
*834 El 21 de febrero de 2008 Allmerica, la señora Serrano Cruz, la señora Vilanova Hernández y el codemandado Miguel A. Rivera Rivera presentaron una moción conjunta en la que solicitaron la reconsideración de la orden que había permitido la sustitución. Expusieron como fundamento que la sustitución del señor Vilanova Díaz por solo algunos de los herederos, con exclusión de otros, es improcedente como cuestión de derecho, ya que no se ha dado la liquidación y partición del caudal relicto y ninguno de los herederos es dueño de una cosa o bien determinado del caudal. De igual manera, adujeron que la sustitución del señor Vilanova Díaz por únicamente algunos de los herederos es improce-dente ya que, como cuestión de derecho y en conformidad con el testamento, la representación del causante corres-ponde a la albacea testamentaria. Por último, indicaron que existe una disputa con otros miembros de la sucesión del señor Vilanova Díaz que son demandados en este caso, que tiene que ventilarse en las acciones reconocidas por ley para ese propósito y que no podía adjudicarse en ese caso.
El 21 de febrero de 2008 el Tribunal de Primera Instan-cia emitió una resolución sobre la mencionada moción, en la que señaló lo siguiente:
Claramente, en este caso, los intereses de los herederos (in-cluyendo a la Albacea) están encontrados y en conflicto.
En principio, no tenemos reparo a la sustitución solicitada para incluir todos los nombres de los miembros de la sucesión, pero antes debe someterse al tribunal copia de la Resolución sobre expedición de Cartas Testamentarias. (Enfasis suprimido.) Caso Núm. CC-2009-0303, Pieza 3, Apéndice, pág. 924.
El 25 de febrero de 2008 el Tribunal de Primera Instan-cia emitió una orden mediante la cual declaró “con lugar” la moción conjunta que solicitó la reconsideración de la or-den de 16 de febrero de 2008, y la dejó sin efecto. Del ex-pediente surge que el 29 de marzo de 2008 la señora Vila-nova Serrano presentó ante el Tribunal de Primera *835 Instancia, en el caso civil número KJV2008-0528, una pe-tición ex parte para que se expidieran cartas testamenta-rias a su favor. Los hermanos Vilanova Hernández y Vila-nova Román presentaron una solicitud de intervención en la que informaron que cuestionarían judicialmente el tes-tamento otorgado por el señor Vilanova Díaz y que, ade-más, solicitarían la descalificación de la señora Vilanova Serrano como albacea y de la señora Serrano Cruz como albacea sustituta y como contadoras partidoras del caudal relicto.(1) Además, solicitaron de forma defectuosa el nom-bramiento de un administrador judicial.
El foro primario emitió una Resolución el 3 de abril de 2008 en el caso de la expedición de cartas testamentarias y decretó el archivo del caso sin perjuicio. De esta resolución solo acudió en apelación ante el Tribunal de Apelaciones la señora Vilanova Serrano. Los hermanos Vilanova Hernán-dez y Vilanova Román no recurrieron de la denegatoria en torno a la administración judicial. El 24 de abril de 2009 el Tribunal de Apelaciones emitió una sentencia mediante la cual revocó el dictamen del Tribunal de Primera Instancia y devolvió el caso a ese foro para que atendiera y dispu-siera de manera final la petición sobre las cartas testamentarias.
De esa determinación acuden ante este Tribunal los her-manos Vilanova Hernández y Vilanova Román. Plantean que el Tribunal de Apelaciones erró al ordenarle al Tribunal de Primera Instancia expedir cartas testamentarias a favor de la señora Vilanova Serrano.
Por otro lado, en el pleito de reivindicación de bienes, luego de varios incidentes procesales, el Tribunal de Pri-mera Instancia dictó una Resolución el 3 de abril de 2008 *836 en la que ordenó que se sustituyera al causante por la al-bacea y todos los otros miembros de la sucesión. Funda-mentó su decisión en el Art. 584 del Código de Enjuicia-mientos Civil, 32 L.P.R.A. sec. 2471, y en lo pautado por este Tribunal en Franceschi v. Corte, 45 D.P.R. 666 (1933), y en Descartes, Tes. v. Tribl. Contribuciones y Cerra, Int., 74 D.P.R. 567 (1953). Además, señaló que las señoras Vila-nova Serrano y Serrano Cruz permanecían en el pleito como partes demandadas en su carácter individual y no como herederas del causante Juan A. Vilanova Díaz.
Inconformes con lo resuelto, todas las partes acudieron al Tribunal de Apelaciones mediante recursos de certiorari separados. Los hermanos Vilanova Hernández sostuvieron que el Tribunal de Primera Instancia erró al determinar que el causante debía ser sustituido por la albacea testa-mentaria, la señora Vilanova Serrano, conjuntamente con los restantes herederos, incluyendo a la viuda codeman-dada, la señora Serrano Cruz. Plantearon, además, que era erróneo determinar que la demanda no era enmendable. En ningún momento los hermanos Vilanova Hernández adujeron que era necesario nombrar un administrador judicial.
Por su parte, la señora Vilanova Serrano y la señora Serrano Cruz alegaron, en síntesis, que el Tribunal de Pri-mera Instancia erró al determinar que ambas debían per-manecer como demandadas y que, a la vez, fuesen inclui-das como codemandantes por ser herederas forzosas. Sostuvieron que tal sustitución es improcedente en dere-cho e inmanejable procesalmente y, que además, viola su derecho constitucional a un debido proceso de ley.
El Tribunal de Apelaciones consolidó los recursos, y el 10 de octubre de 2008 emitió la sentencia que es objeto de este recurso. Dispuso, en síntesis, lo siguiente:
Ante este cuadro fáctico y procesal, nos parece que cobra vigencia lo dispuesto en el Artículo 564 del Código de Enjui- *837 ciamiento Civil, supra, que permite, a nuestro juicio, que el tribunal designe un extraño de conocida honradez y capacidad para que sustituya, represente y defienda los intereses del fi-nado Vilanova Díaz y de las corporaciones codemandantes en este pleito. Caso Núm. CC-2009-0303, Pieza 1, Apéndice, pág. 106.
En cuanto a la parte del dictamen en que el Tribunal de Primera Instancia cerró las puertas a permitir enmiendas a las alegaciones, el Tribunal de Apelaciones entendió que en esa etapa del trámite del caso ello constituía una acción irrazonable. El foro apelativo intermedio añadió que una vez se designe un administrador judicial que sustituya y represente al señor Vilanova Díaz como demandante en este pleito, debe concedérsele oportunidad para decidir si propone o no enmiendas a las alegaciones de la demanda. Las peticionarias no solicitaron revisión sobre ese extremo de la sentencia.
Mediante un recurso de certiorari presentado ante este Tribunal, las señoras Vilanova Serrano y Serrano Cruz plantean que el foro apelativo intermedio erró al no aplicar el Art. 584 del Código de Enjuiciamiento Civil, supra. Se-ñalaron, además, que es erróneo sugerir que, una vez el caso regrese ante el Tribunal de Primera Instancia, se nombre a un “extraño” para que se desempeñe como admi-nistrador judicial y represente al finado en este caso, lo cual equivale a una remoción de facto de la albacea testa-mentaria y a una adjudicación judicial a base de meras alegaciones y teorías, sin vista alguna y en clara violación a los más elementales principios del derecho constitucional a un debido proceso de ley. Los hermanos Vilanova Her-nández y Vilanova Román solicitaron la consolidación de los dos recursos ante este Tribunal, a lo que accedimos el 15 de enero de 2010.
*838 h — I h — I
A
Nuestro ordenamiento procesal regula lo relativo a la sustitución de parte por muerte en la Regla 22.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. En específico, dicha regla establece que cuando una parte fallece y la reclamación no queda extinguida por ello, cualquiera de las partes en el procedimiento o sus abogados notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta días. Luego, el tribunal, a solicitud presentada dentro de los noventa días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas.
Como se aprecia, la Regla 22.1 hace alusión a la parte apropiada, pues es el derecho sustantivo de cada caso el que indica quién es la parte idónea que debe sustituir al causante. Al interpretar la Regla 22.1 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III —fundamentalmente idéntica a la de 2009 en lo que nos concierne— mencionamos que “atiende el interés público de que los asuntos en los tribunales se solucionen de forma expedita para evitar el perjuicio que la dilación pueda causar a las partes”. Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 685 (1989).
De igual forma, se ha mencionado varias veces que “el trámite procesal de sustitución en nada afecta los derechos sustantivos de las partes”. Pereira v. I.B.E.C., 95 D.P.R. 28, 66 (1967). Véase, además, Lluch v. España Service Sta., 117 D.P.R. 729 (1986). Esto implica que la parte que susti-tuye se coloca en “los mismos zapatos” que la parte sustituida. Conviene señalar que ningún inciso de la Regla 22 de Procedimiento Civil, supra, ni su jurisprudencia in-terpretativa, sugieren que se puede sustituir al causante *839 por un administrador judicial cuando ninguna parte lo ha solicitado.
Recientemente mencionamos en García Colón et al. v. Sucn. González, 178 D.P.R. 527, 548 (2010), que una parte indispensable es aquella “de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos”. Véase Regla 16.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. Así pues, los intereses de esa parte “podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio”. Fuentes v. Tribl. de Distrito, 73 D.P.R. 959, 981 (1952). Por eso, el interés al que hace referencia la Regla 16.1 de Procedimiento Civil, supra, “no es cualquier interés en el pleito, sino que tiene que ser de tal orden que impida producir un decreto sin afectarlo”. Romero v. S.L.G. Reyes, 164 D.P.R. 721, 733 (2005).
Conviene recordar que es posible que
... una sucesión sea parte demandante o demandada, pero para ello es necesario que se particularice e individualice ex-presando los miembros que la componen. No es una entidad legal independiente de los herederos. Estos son los que la de-terminan y son los que deben aparecer como demandantes o demandados. Arvelo et al. v. Banco Ter.y Ag. de P.R., 25 D.P.R. 728, 736 (1917), reiterado en Pino Development Corp. v. Registrador, 133 D.P.R. 373, 388 (1993). Véanse, además: Kogan v. Registrador, 125 D.P.R. 636, 656 (1990); Vega v. García, 61 D.P.R. 99 (1942); E. González Tejera, Derecho de sucesiones, tomo I: la sucesión intestada, San Juan, Ed. U.P.R., 2001, págs. 44-45.
En otras palabras, desde principios del siglo pasado he-mos dejado meridianamente claro que la sucesión, como tal, no tiene personalidad jurídica independiente de los miembros que la componen. Así, para que la sucesión pueda demandar o pueda sustituir a un demandante falle-cido, es necesario que se traiga al pleito cada uno de sus *840 miembros. En este caso el foro primario ordenó que toda la sucesión fuese demandante, incluyendo las herederas demandadas. Fundamentó su posición en el Art. 584 del Código de Enjuiciamiento Civil, supra, y en lo resuelto en Franceschi v. Corte, supra, y en Descartes v. Tribl. Contribuciones y Cerra, Int., supra. Analicemos estos preceptos.
El Art. 584 del Código de Enjuiciamiento Civil, supra, establece que
[s]erá deber de los administradores y, mientras éstos se nombren, de los albaceas representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte y los que se promovieran después por o contra el caudal de la herencia. Las acciones o procedimientos instruidos por o contra el finado se suspenderán a su muerte ínterin se haga cargo el albacea o se nombre un administrador y el alba-cea o administrador quedará subrogado como parte en la acción.
Resulta preciso puntualizar que el Art. 584 del Código de Enjuiciamiento Civil procede en parte del Art. 1008 de la Ley de Enjuiciamiento Civil española de 1881. En particular, el Art. 1008 de la ley española dispone:
El administrador de los bienes representará al ab intestato en todos los pleitos que se promuevan o que estuvieren principia-dos al prevenirse este juicio, así como en todas las incidencias del mismo que se relacionen con el caudal, excepto en lo rela-tivo a la declaración de herederos, en cuyas actuaciones no tendrá intervención.
También ejercitará en dicha representación las acciones que pudieran corresponder al difunto, aunque deban deducirse en otro Juzgado o Tribunal, o en la vía administrativa; y asi-mismo la tendrá en los demás actos en que sea necesaria la intervención del ab intestato, hasta que se haga la declaración de herederos por sentencia firme. J.M. Manresa y Navarro, Comentarios a la Ley de Enjuiciamiento Civil reformada, 3ra ed., Madrid, Imprenta de la Revista de Legislación, 1910, pág. 356.
Como se aprecia, este inciso español regulaba la admi-nistración de los bienes en las sucesiones intestadas y no *841 en las testadas, como la que nos ocupa. Sin embargo, la Ley de 9 de marzo de 1905, mejor conocida como la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. see. 2241 y ss., reconstruyó el Art. 1008 de la ley española. Así, se eli-minó la referencia a la sucesión intestada y se incluyó tam-bién al albacea como encargado de representar al causante en los pleitos que tuviera pendientes al momento de su muerte. Lamentablemente, la legislación de 1905 no cuenta con un historial legislativo que nos ayude a enten-der la razón del legislador puertorriqueño para modificar la legislación española. No obstante, este Foro ha tenido la oportunidad de interpretar esa sección.
En Franceschi v. Corte, supra, pág. 675, al analizar nuestro Art. 584 del Código de Enjuiciamiento Civil, mencionamos que no era idéntico al Art. 1008 de la Ley de Enjuiciamiento Civil de España, que limita la administración al abintestato. Por ende, concluimos que dicho artículo es “aplicable, lo mismo al abintestato que al juicio de testamentaría”. Id. A renglón seguido, mencionamos que
... el administrador judicial representará al finado en todos los pleitos que se promuevan en pro o en contra de la herencia, ínterin recaiga la declaración de herederos, los cuales tendrán desde entonces dicha representación, y aclaramos y amplia-mos el alcance de nuestra decisión, haciendo constar que los herederos no adquieren una representación exclusiva y que el administrador judicial, en virtud de la representación que ex-presamente le confiere la ley, y los herederos como partes real-mente interesadas, deben actuar conjuntamente en todos los litigios que se promuevan en favor o en contra del caudal hereditario. Id., pág. 676.
Claro está, en Franceschi v. Corte, id., el pleito no era contra el albacea o el administrador judicial. Allí la contro-versia giraba en torno a si procedía la finalización de la administración judicial y la consecuente liquidación del caudal hereditario. Posteriormente, este Tribunal tuvo la oportunidad de analizar el Art. 584 del Código de Enjuiciamiento Civil, supra, en Descartes v. Tribl. Contribuciones y *842 Cerra, Int., supra. En ese caso, el administrador de una sucesión demandó al entonces Tesorero de Puerto Rico por ciertas actuaciones de este respecto el caudal. Así las cosas, el Tesorero argumentó que como los herederos no habían demandado y solo lo había hecho el albacea, faltaba una parte indispensable y procedía el archivo del caso. Sin embargo, aunque reconocimos el precedente fundado en Franceschi v. Corte, supra, establecimos que no aplicaba porque no se demostró que para la fecha de la presentación de la demanda existiera un testamento válido o, en su defecto, una declaratoria de herederos. Por ende, no desestimamos el pleito por razón de falta de parte indispensable.
De igual forma, conviene puntualizar lo que ex-presamos en Paine v. Srio. de Hacienda, 85 D.P.R. 817 (1962). Allí, al analizar si la cláusula constitucional de privilegios e inmunidades prohibía que se le cobrara a un caudal hereditario una tasa de contribución mayor a la que se le cobraba a un residente, mencionamos que
[n]ada se encontrará en nuestro ordenamiento jurídico que nos permita considerar al albaceazgo como una entidad jurí-dica distinta a los herederos que representan. El albaceazgo no es otra cosa que una administración acompañada de un derecho de representación para cumplir ciertas funciones es-pecíficas relacionadas con la conservación del caudal heredita-rio hasta el momento en que la herencia sea adida por los herederos, y como tal, tampoco podemos considerar a los alba-ceas como que forman una persona jurídica distinta a los he-rederos .... íd., pág. 820.
Finalmente, concluimos que la sucesión y los albaceas no tenían personalidad jurídica propia, por lo que la cláu-sula constitucional de privilegios e inmunidades aplicaba y, por consiguiente, no se le podía cobrar una tasa mayor de impuestos a los herederos. íd.
No hay duda de que los hechos del presente caso son noveles en nuestra jurisdicción. Desafortunadamente, no contamos con algún documento que pueda arrojar luz *843 sobre la intención legislativa. Sin embargo, si se analizan las opiniones emitidas por este Tribunal sobre el Art. 584, supra, debemos concluir que, como norma general, es ne-cesario sustituir al causante por los herederos y el albacea o administrador. Sin embargo, en ninguno de esos casos, la persona designada albacea era parte demandada en un pleito instado en vida por el causante. Los hechos de este caso propician la creación de una excepción a dicha norma. Así, la parte apropiada —según mencionada por la Regla 22.1 de Procedimiento Civil, supra— que debe sustituir al causante en un pleito que este instara en vida contra el designado albacea, es solamente su sucesión.
No obstante, este caso es más complejo aún. Dos de las herederas son, a su vez, demandadas en el pleito del cual se pide la sustitución. Ante ese escenario, los herederos no demandados del causante, a saber, los hermanos Vilanova Hernández y Vilanova Román, deben ser los que lo sustituyan como parte demandante. Las herederas y albaceas designadas, a saber, las señoras Vilanova Serrano y Serrano Cruz, deben permanecer como parte demandada. Sería una aberración jurídica acceder a que las albaceas designadas aparezcan como demandantes y demandadas a la vez, pues nadie puede demandarse a sí mismo. Véanse: United States v. I.C.C., 337 U.S. 426, 430 (1949); Sentencia del Tribunal Supremo de España de 4 de julio de 2005, Núm. 555/2005, Tomo LXXI, Vol. IV, Repertorio de Jurisprudencia Aranzadi, pág. 10662.
Como ya se discutió, no hay duda de que toda la suce-sión es parte indispensable en este pleito. Sin embargo, las demandadas Vilanova Serrano y Serrano Cruz están impe-didas de sustituir al causante en este pleito como deman-dante porque son la parte demandada. Eso no implica que hayan perdido su derecho a la porción del caudal heredita-rio, según dispuso el causante en su testamento abierto otorgado en 1994 y vinculante en derecho hasta que algún tribunal disponga lo contrario.
*844 Sencillamente, en este caso habría un conflicto insalva-ble que se convertiría en un acto de omnipresencia jurídica si se permitiera que las herederas demandadas sean, a su vez, demandantes. Además, sus derechos como herederas no se verán trastocados, ya que no están ausentes del pleito sino, más bien, en un lado opuesto a los demás herederos. Desde esa postura podrán defender efectiva-mente sus derechos.
B
Ahora bien, el Tribunal de Apelaciones solucionó la con-troversia con el nombramiento de un administrador judicial para que se encargue de todo el caudal hereditario y para que represente a la sucesión en el caso de reivindica-ción de bienes. Dicha solución es errada.
Como muy bien señaló el foro apelativo intermedio en la pág. 35 de su sentencia, “todos los miembros de la sucesión de Vilanova Díaz son partes indispensables en este pleito, por ser personas sin cuya presencia no puede adjudicarse la controversia y sus intereses pueden quedar afectados por cualquier sentencia que en su día se dicte”. Caso Núm. CC-2009-0303, Pieza 1, Apéndice, pág. 108. Entonces, si son partes indispensables, ¿cómo pueden ser removidos y sustituidos por un administrador judicial? Veamos el dere-cho pertinente en cuanto a la designación del administra-dor judicial.
El Art. 556 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2361, esboza quiénes son las personas legitimadas para solicitar la administración judicial, cuáles son los requisitos y cuál es el procedimiento que se seguirá en esos casos.(2) En específico, este artículo contiene unos re- *845 quisitos estrictos, los cuales incluyen una petición jurada. En este caso no se cumplió con los preceptos allí indicados.
De igual forma, el Art. 557 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2362, establece a quiénes el testador puede prohibirles que soliciten la administración judicial. En particular, dicho precepto expone:

See. 2362. Cuándo no se decreta administración judicial; acreedores con créditos asegurados

Si el testador hubiese prohibido expresamente en el testa-mento a los herederos voluntarios y legatarios de partes alí-cuotas una administración judicial de sus bienes, y hubiese nombrado una o más personas, facultándolas para que, con el carácter de albaceas, comisionados o contadores partidores, practicasen las operaciones divisorias de dichos bienes, no po-drá decretarse la administración judicial de éstos.
Los acreedores que tengan asegurados sus créditos, y aqué-llos a quienes los deudores dieren fianza bastante para responder de sus créditos independientemente de los bienes del finado, no tendrán derecho a pedir la administración judicial.
Este artículo fusiona los Arts. 1039 y 1040 de la Ley de Enjuiciamiento Civil Española de 1881. Véase D.E. Reus, Ley de Enjuiciamiento Civil, 2da ed., Madrid, Hijos de Reus, Editores, 1908, T. II, págs. 928-929. Al comentar *846 los preceptos de la ley española, Reus comenta lo siguiente en lo pertinente a los herederos voluntarios:
[S]i el testador les ordena que se distribuyan la herencia en la forma por él establecida, y les proh[í]be expresamente acu-dir para ello [a] los Tribunales, no podrán promover juicio de testamentaría sin incurrir en la pena que para este caso les haya impuesto el testador, y están obligados [a] observar es-trictamente las reglas por éste establecidas para el inventario, avalúo y división de sus bienes .... En cuanto a los herederos forzosos, como por el artículo 813, párrafo 2.°, del Código Civil [nuestro Art. 741], el testador no puede imponerles gravamen ni condición alguna en su legítima, podrán promover dicho juicio, aun cuando el testador lo haya prohibido, sin que por ello sufran menoscabo en su legítima. Id., págs. 923-924.
En otras palabras, un testador no puede prohibir a sus herederos legitimarios que acudan al tribunal para solici-tar la administración judicial de sus bienes. Esto sin duda podría lesionar su legítima y, como conocemos, nuestro or-denamiento jurídico brinda una amplia protección al dere-cho de los herederos forzosos sobre ella. Véanse: Art. 741 del Código Civil, 31 L.P.R.A. sec. 2367; Manresa y Navarro, op. cit., págs. 417 y 418 y casos del Tribunal Supremo de España allí citados.
Sin embargo, este caso no versa sobre la petición de nombramiento de un administrador judicial. Por ende, aunque en estricto derecho se puede nombrar un administrador judicial para la sucesión Vilanova Díaz, los herederos no han seguido el proceso que establece el Código de Enjuiciamiento Civil para ello. Basta recordar la naturaleza rogada de nuestro Derecho y que este Tribunal, con sus decisiones, no se puede convertir en abogado de ninguna de las partes, pues eso viola los más básicos principios del debido proceso de ley. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. IV, pág. 1256. Dicho de otro modo, “los tribunales son organismos que resuelven las disputas que se suscitan entre los ciudadanos y que sean llevadas ante su *847 consideración, sin que les sea dable intervenir motu pro-prio en tales disputas”. R. Elfren Bernier y J. Cuevas Se-garra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 3.
Por otro lado, el Art. 558 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2363, establece las ocasiones en que es necesario el nombramiento de un administrador judicial. De esta forma, la administración judicial será necesaria siempre que haya herederos ausentes, menores o incapacitados que no estén debidamente representados. En Ab Intestato Balzac Vélez, 109 D.P.R. 670, 679 (1980), establecimos que aunque el Art. 558 especifica las circunstancias que hacen necesaria la administración judicial, no excluye otras. No obstante, la única controversia que tenemos que decidir hoy es quién sustituye al causante en un pleito de reivindicación de bienes. No está ante nuestra consideración una solicitud para nombrar un administrador judicial que represente al causante en el pleito. Y es que no hace falta, pues todos los herederos son mayores de edad y pueden defenderse. Además, los herederos son partes indispensables y no pueden ser sustituidos por un administrador judicial. A diferencia de este caso, en Ab Intestato Marini Pabón, 107 D.P.R. 433 (1978), y en Ab Intestato Balzac Vélez, supra, sí se solicitó la administración judicial. Fue el Tribunal de Apelaciones en este caso el que impuso un administrador que no se le solicitó.
Si bien es cierto que los hermanos Vilanova Hernández y Vilanova Román solicitaron de forma defectuosa el nom-bramiento de un administrador judicial ante el foro prima-rio, también es correcto que cuando ese foro desestimó la petición de cartas testamentarias sin perjuicio, denegó la petición de administración judicial. De esa decisión los her-manos Vilanova Hernández y Vilanova Román no recurrieron. Fue luego que el foro apelativo intermedio *848 nombrara un administrador judicial que ellos enmendaron sus alegaciones para incluir esto en su petitorio.
Esa actuación claramente constituye un cambio de teoría que, además de ser improcedente, es tardío. Dicho de otro modo, debido al sistema adversativo que rige en nuestra jurisdicción, como norma general, es necesario plantear los argumentos en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones, para que luego se puedan aducir en este Foro. Esa es la práctica forense que rige en nuestra jurisdicción y a la cual este Tribunal tiene que brindar deferencia.
Es cierto que un “ Tribunal apelativo tiene la facultad inherente de considerar y resolver errores patentes que surjan de un recurso aun cuando éstos no hayan sido pre-sentados por las partes’ ”. S.L.G. Flores-Jiménez v. Colberg, 173 D.P.R. 843, 851 (2008), citando a Hernández v. Espinosa, 145 D.P.R. 248, 264 (1998). Sin embargo, esa norma excepcional tiene que ser limitada. De lo contrario, nos convertiríamos en un foro consultivo y adjudicaríamos con-troversias que no han sido planteadas ni defendidas vigorosamente. En este caso, no se configura ninguna ex-cepción que nos lleve a desechar la norma general.
Pero aun si para fines argumentativos decidiéramos que procede decretar una administración judicial, la realidad es que esa administración no puede remover a los herede-ros del pleito, ya que son partes indispensables.
En suma, el causante Vilanova Díaz debe ser sustituido por todos sus herederos no demandados —a saber, los her-manos Vilanova Hernández y Vilanova Román— en el pleito de reivindicación de bienes pues estos son la parte apropiada a la que alude la Regla 22.1 de Procedimiento Civil, supra.
*849 HH HH HH
El Art. 597 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2571, indica lo siguiente:

See. 2571. Aceptación del cargo; expedición de cartas testamen-tarias

Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya ofi-cina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, sin lo cual no po-drá hacerse cargo de los bienes del finado. La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad. (Énfasis nuestro.)
Aunque nuestra figura del albaceazgo es heredada de España, la realidad es que en ese país no existe tal cosa como una expedición de cartas testamentarias. Véase, en general, M. Albaladejo, El albaceazgo en el derecho espa-ñol, Madrid, Ed. Tecnos, 1969. En cambio, para poder aus-cultar cuál es el procedimiento a seguir en estos casos, es necesario acudir al derecho consuetudinario (common law) de Estados Unidos, porque es de allí que proviene esta figura. Véase J.A. Schoenblum, Page on the Law of Wills, Cincinnati, Anderson Publishing Co., 2003, Sec. 1.3, pág. 13.
El término cartas testamentarias se define como aquel “instrumento formal de autoridad y nombramiento dado a un ejecutor por el tribunal correspondiente, facultándolo a *850 desempeñar su cargo”.(3) (Traducción nuestra.) Black’s Law Dictionary, 5ta ed., Minnesota, West Publishing Co., 1979, pág. 815. Es decir, la norma general en el derecho sucesorio del derecho consuetudinario estadounidense es que para que un ejecutor o albacea pueda hacerse cargo de un caudal hereditario, es necesario que primero acuda ante el tribunal competente para que pruebe la existencia de un testamento, y que en este se le nombró ejecutor. Véanse: Schoenblum, op. cit., pág. 13; Uniform Probate Code (ULA), Sec. 3-103.
La aprobación del Art. 597 del Código de Enjuiciamiento Civil, supra, se remonta a 1905 con la promulgación de la Ley de Procedimientos Legales Especiales. 1904-1905 Leyes de Puerto Rico 213-242. Como ya se comentó, no contamos con un historial legislativo que nos indique cuál fue la intención del legislador al añadir a nuestro ordenamiento jurídico sucesoral una figura del common law. No obstante, el texto del Art. 597 es claro al establecer que sin la expedición de las cartas testamentarias, el albacea o administrador no puede hacerse cargo de los bienes. Esto quiere decir que en esta jurisdicción ningún albacea facultado para administrar los bienes de una sucesión puede hacerlo sin que antes el tribunal expida las correspondientes cartas testamentarias. Ahora bien, aparte del Art. 597, supra, en Puerto Rico no existe otro estatuto que regule este procedimiento. Para poder llenar esa laguna y resolver la controversia según nos exige el Art. 7 del Código Civil, 31 L.P.R.A. see. 7, es necesario acudir al derecho comparado y ver las soluciones que ofrece. Y es que, después de todo, en los “casos apropiados será lícito el empleo del derecho común en sus múltiples y ricas versiones —la angloamericana, la original británica, la anglo- *851 canadiense y otras— a modo de derecho comparado, así como el uso de ejemplos de otros sistemas jurídicos”. Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692, 697 (1979). Debido a que la figura de las cartas testamentarias no proviene de España, es un esfuerzo fútil analizar el derecho de ese país. Por lo tanto, este es un caso apropiado para acudir al derecho consuetudinario estadounidense.(4)
A
El Uniform Probate Code es una legislación modelo que produjo la National Conference of Commissioners on Uniform State Laws. Esta legislación es producto de siete años de análisis durante los cuales se obtuvo el in-sumo de varias divisiones de la American Bar Association. R. Brucken, Uniform Probate Code and the Practice of Law in Ohio, 7 Akron L. Rev. 69 (1973). Esta legislación modelo recoge, entre otras cosas, todo lo relativo a la administración de los bienes de una herencia. Uniform Probate Code (ULA) Secs. 3-101 a 3-322.
En lo que nos concierne, conviene citar el inciso (f) de la Sección 3-203, supra, que establece:
(f) Ninguna persona es apta para servir como albacea si:
(1) Es menor de 21 años
(2) Luego de un procedimiento formal, el tribunal determina *852 que no es idóneo. (Énfasis y traducción nuestros.)(5)
Según surge de lo anterior, el comité de expertos en la materia que diseñó el Uniform Probate Code estableció dos requisitos para poder ejecutar el cargo de albacea: (1) que la persona designada por el testador fuese mayor de edad y (2) que fuese una persona idónea. Notamos que esta legis-lación modelo no definió el término idóneo. Al actuar así, delegó esa tarea en los tribunales de cada estado para que, según surgieran controversias, definieran los contornos de esa figura.
No todas las jurisdicciones de Estados Unidos han adop-tado el Uniform Probate Code.(6) Sin embargo, aunque no todos los estados han adoptado el lenguaje literal del Uniform Probate Code, lo cierto es que sí han incorporado un lenguaje similar. Pasemos a estudiar dos de esas jurisdic-ciones, ya que aunque sus decisiones no nos obligan, sí nos persuaden porque han tenido la oportunidad de analizar en detalle controversias similares a la que hoy nos ocupa.(7)
*853 B
El Art. 3082 del Código de Procedimiento Civil de Louisiana establece que
[a] menos qne la persona designada como albacea en el testa-mento sea descalificada por cualesquiera de las razones ex-puestas en el Artículo 3097, la corte deberá rendir una orden, a su solicitud, para la confirmación, confirmándola como eje-cutora testamentaria y ordenando la expedición de cartas tes-tamentarias luego de que ella haya prestado juramento al cargo y satisfecho fianza, de ser necesario. (Traducción nuestra.)(8)
Al igual que nuestro Art. 597 del Código de Enjuicia-miento Civil, supra, el Art. 3082 de Louisiana exige que el albacea preste juramento y afirme que desempeñará el cargo propiamente.(9) No obstante, ambos se diferencian en que el segundo contempla la posibilidad de que no se expi- *854 dan cartas testamentarias a favor del albacea si se cumple con algunas de las razones que esboza el Art. 3097 de ese código. En específico, el Art. 3097 del Código de Procedi-miento Civil de Louisiana, La. C.C.P. 3097, señala en lo pertinente:
A. Ninguna persona puede ser confirmada como albacea o al-bacea dativo, administrador provisional o administrador si es:
(1) Menor de dieciocho años;
(2) Persona que en juicio adversativo se le haya probado que está mentalmente incompetente;
(3) Una persona convicta de delito grave bajo las leyes de los Estados Unidos o de cualquier estado o territorio;
(4) Un no residente del estado que no haya designado a un agente residente para el procesamiento de todas las acciones y procedimientos relacionados a la sucesión;
(5) Una corporación no autorizada a realizar negocios en este estado; o
(6) Una persona que luego de juicio adversativo se le haya probado que no está capacitada para la designación debido a conducta inmoral. (Traducción nuestra.)(10)
Se puede constatar en este Art. 3097, supra, que el le-gislador del estado de Louisiana no permite que se expidan cartas testamentarias a favor de menores, de incapaces, de convictos de delito grave, de personas no residentes si no han designado un agente residente en el estado, de corpo-raciones no autorizadas a realizar negocios en el estado y de personas que, luego de una vista adversativa, se les *855 prueba conducta inmoral. De las personas descalificadas para actuar como albacea al amparo del Art. 3097, supra, todas se explican por sí mismas, excepto el inciso (6), que hace referencia a la persona con conducta inmoral. Aunque el Tribunal Supremo del estado de Louisiana no se ha ex-presado sobre ese término, el Cuarto Circuito del Tribunal de Apelaciones de ese estado tuvo la oportunidad de exa-minarlo en Succession of Horrell, 709 So.2d 1069, cert. denegado, 720 So.2d 669 (1998). Allí se manifestó que “ ‘ [c] onducta inmoral’ no solo incluye los tipos tradicionales de comportamiento o las malas acciones anteriores que in-dican [que el albacea] no está en condiciones de asumir las responsabilidades como administrador de la sucesión”. (Traducción nuestra.) Id., pág. 1071.(11) En particular, ese foro dictaminó que la participación del hijo del causante en la ejecución de un testamento que luego se declaró inválido y en la ejecución de una donación hecha por el causante, también constituían la conducta inmoral a la que hace re-ferencia el Art. 3097, supra. Id.
Sin embargo, el foro apelativo intermedio de Louisiana fue más allá al establecer que, aun en el supuesto de que la conducta del hijo del causante fuese inmaculada en lo que concernía a la ejecución del testamento y de la donación, las circunstancias del caso, que incluía la animosidad exis-tente entre las partes, eran suficientes para concluir que no se podía permitir que el hijo fuese el albacea. Id.
En otras palabras, no se permitió que se expidieran car-tas testamentarias a favor de un hijo al que se le probó que participó en la ejecución de un testamento que posterior-mente fue declarado inválido y que recibió una donación que era cuestionada judicialmente. Sin embargo, todo esto ocurrió luego de que se celebrara una vista adversativa en la que las partes pudieron presentar toda la evidencia per- *856 tinente y se cumplió con los requisitos del debido proceso de ley.
C
Por otra parte, la Sección 2113.5 del Código revisado y anotado de Ohio esboza, en lo pertinente:
Cuando un testamento es aprobado y permitido, el tribunal deberá expedir cartas testamentarias al albacea nombrado en el testamento ..., si es idóneo, competente, acepta el cargo y presta la correspondiente fianza, de ser necesaria. (Traducción nuestra.)(12) Ohio Rev. Code Ann. 2113.5
De esta definición resalta que el albacea tiene que tener el calificativo de idóneo. El Tribunal Supremo de Ohio mencionó en In re Estate of Henne, 421 N.E.2d 506, 508 (1981), “que el término idóneo no está definido por ley, y por ende, sus límites son establecidos solamente mediante el análisis de la jurisprudencia”. (Traducción nuestra.) Así, pues, en Ohio el nombramiento de un albacea depende de que, en un análisis caso a caso, el tribunal determine que este es idóneo para asumir el cargo.(13) Sobre el particular, en In re Estate of Young, 4 Ohio App. 2d. 315, 321—322 (1964), se dijo que el interés adverso y antagónico del al-bacea designado con la sucesión puede conllevar que no se expidan las cartas testamentarias, dependiendo de la na-turaleza y el alcance de ese interés adverso, de la relación *857 entre las partes o de otras circunstancias subyacentes en el caso particular. A renglón seguido, el tribunal añadió que
[e]n vista de esos principios, no se puede desarrollar una regla específica que aplique a todos los casos. Sin embargo, el crite-rio general es evidente. La naturaleza fiduciaria de la posición de albacea es clara y las obligaciones que surgen de esa rela-ción de confianza son evidentes. El derecho requiere que el fiduciario sea una persona desinteresada, tanto personal-mente como entre los beneficiarios. Por otro lado, el derecho le da una preferencia a la confianza que un testador deposita en una persona en particular .... El término idóneo que aparece en la ley lidia con el conflicto entre esos dos propósitos que el derecho persigue. En nuestra opinión, se contempla que para ser idónea, una persona debe ser razonablemente desinteresada. En caso de conflicto de intereses contrarios y antagónicos con la posición de fiduciario, la pregunta se con-vierte en una de sopesar el grado de conflicto a la luz de la totalidad de las circunstancias. (Traducción nuestra.) Id.
Este análisis lo adoptó el Tribunal Supremo de Ohio y concluyó que el albacea nombrado en el testamento no era idóneo. Id., pág. 510. Al así resolver, reconoció que se debe otorgar gran deferencia al nombramiento que hace el cau-sante en el testamento. No obstante, subrayó una serie de factores para determinar si la persona es razonablemente desinteresada; en otras palabras, si es idónea para ser albacea. Estos factores se pueden apuntalar de la forma siguiente:
1. La naturaleza y extensión de la hostilidad y descon-fianza entre las partes.
2. El grado de conflicto de intereses y obligaciones tanto personales como financieras del albacea designado.
3. Las complejidades adicionales que puedan subyacer en el caso en particular. Id., pág. 509.
D
En el caso que nos ocupa, el Tribunal de Primera Ins-tancia desestimó sin perjuicio la petición de cartas testa-mentarias hasta que se ventilara el pleito de impugnación *858 de testamento. Erró al proceder así, pues con su actuación, denegó en los méritos la expedición de cartas testa-mentarias.
Es cierto que en la mayoría de los casos el procedimiento de expedición de cartas testamentarias es de jurisdicción voluntaria, que se tramita en el despacho del juez de primera instancia sin mayores incidentes. Batiz v. Tribunal Superior, 104 D.P.R. 41 (1975). Incluso, ya se pueden resolver en el despacho de un notario. Véanse las Reglas 109—112 en In re Aprob. R. Ley Asuntos No Cont. Not., 182 D.P.R. 860 (2011). Sin embargo, de existir oposición a que se expidan las cartas, lo que procede es convertir el proceso en uno contencioso y seguir el trámite ordinario. Y es que
... con frecuencia sucede que dentro de mi procedimiento de jurisdicción voluntaria comparecen al tribunal varias partes en defensa de intereses completamente opuestos. Cuando así ocurre ... se establece una genuina controversia a ser adjudi-cada por un tribunal de instancia mediante un trámite dotado de múltiples características análogas a las de un juicio conten-cioso o plenario. Batiz v. Tribunal Superior, supra, págs. 45-46.
No podemos perder de perspectiva que nuestro ordenamiento jurídico busca dar cumplimiento a la voluntad del testador en la disposición de sus bienes siempre y cuando ello no sea contrario a la ley. Torre Ginés v. E.L.A., 118 D.P.R. 436, 445 (1987). De esta manera, “[l]o funda1 mental es que prevalezca la voluntad real del testador [y el] rol judicial, en materia de interpretación testamentaria, consiste en descubrir [dicha] voluntad a fin de que se produzcan en su día los efectos queridos por el testador dentro del marco permitido por ley”. Moreda v. Rosselli, 150 D.P.R. 473, 480 (2000). De igual forma, en innumerables ocasiones, “este Tribunal ha expresado que la voluntad del testador es la ley de la Sucesión’ ”. Id. Véanse, además: Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 *859 (1986); Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983); Vda. de Sambolín v. Registrador, 94 D.P.R. 320 (1967). En el caso que nos ocupa, existe un testamento abierto que goza de la fe pública notarial y es válido y vinculante hasta que se pruebe lo contrario. Véanse: Art. 2 de la Ley Notarial de 1987, 4 L.P.R.A. sec. 2; In re Rivera Aponte, 169 D.P.R. 738, 741 (2007).
Así pues, al tener presente que la voluntad del testador plasmada en el testamento es vinculante, analicemos los criterios que se deben auscultar cuando hay objeción a que se expidan las cartas testamentarias.
En vista de que nuestra legislación no establece cuáles son los factores que tiene que examinar el juez del foro primario al dilucidar si expide las cartas testamentarias, es necesario que este Foro actúe y los supla.
Como norma general, se debe cumplir la voluntad del testador y expedir cartas testamentarias a favor del alba-cea nombrado en el testamento. Sin embargo, hay que te-ner presente la prohibición que establece el Art. 815 del Código Civil, 31 L.P.R.A. sec. 2512: “No podrá ser albacea el que no tenga capacidad para obligarse. El menor no po-drá serlo, ni aun con la autorización del padre o tutor.” Es decir, en nuestra jurisdicción, a diferencia de la de Louisiana, la única razón que recoge nuestro ordenamiento ju-rídico para no ser nombrado albacea es la incapacidad de poder obligarse. Esta incluye la minoridad, prodigalidad, embriaguez habitual y la sordomudez que impida comuni-carse efectivamente por cualquier medio. Art. 25 del Có-digo Civil, 31 L.P.R.A. sec. 82.
No obstante, las limitaciones establecidas en el Código Civil para ejercer el albaceazgo no son taxativas. Es evidente que la persona designada albacea tiene que ajustarse al principio que regula su misión, la fiducia. De esta forma, cuando el albacea acepta el cargo, se obliga a desempeñarlo fielmente. Art. 821 del Código Civil, 31 L.P.R.A. sec. 2518; Albaladejo, op. cit., pág. 397. “Su desempeño re- *860 quiere la diligencia de un buen padre de familia.” González Muñiz, Ex parte, 128 D.P.R. 565, 572 (1991). Véanse, ade-más, Art. 1057 del Código Civil, 31 L.P.R.A. see. 3021; J.J. Gómez Ysabel, Problemas fundamentales del ejercicio del albaceazgo, Madrid, Inst. Ed. Reus, 1963, pág. 48. Debido a la naturaleza fiduciaria que conlleva el cargo de albacea, según expuesta por la doctrina civilista, concluimos que está implícito en nuestro ordenamiento legal el elemento de la idoneidad que la ley en estados como Ohio establece expresamente. In re Estate of Henne, supra. Es decir, am-bos sistemas legales —el civil y el consuetudinariocoinci-den— en ese aspecto. En otras palabras, además de lo es-tablecido por el Art. 815 del Código Civil, supra, todo albacea tiene que ser idóneo para ocupar el cargo. Después de todo, “[p]or la aceptación se obliga el albacea a desem-peñar el cargo bien y fielmente, respondiendo personal-mente de todos los perjuicios ocasionados por dolo o negli-gencia a él imputables”. L. Puig Ferriol, El albaceazgo, Barcelona, Ed. Bosch, 1967, pág. 127.
Claro está, se debe presumir que todo albacea designado por el testador es idóneo. Sin embargo, en casos como el que nos ocupa, en el que existe una controversia genuina sobre la idoneidad del albacea, es necesario que el foro primario reciba prueba sobre ese particular. Para poder determinar si se cumple con ese requisito, el foro primario debe sopesar los factores siguientes:
1. La naturaleza y la extensión de la hostilidad y des-confianza entre el albacea designado y la sucesión.
2. El grado de conflicto de intereses y obligaciones tanto personales como financieras del albacea designado.
3. Las complejidades adicionales que puedan subyacer en el caso en particular.
Al aplicar estos criterios, el Tribunal de Primera Instan-cia tendrá un marco teórico que le permitirá ejercer su función y determinar si procede la expedición de cartas testamentarias. Lo que no procede es archivar sin perjuicio *861 una petición de expedición de cartas testamentarias con el pretexto de que en otro pleito se impugna el testamento que contiene el nombramiento del albacea. Eso abriría la puerta para que herederos disgustados con el albacea se-leccionado impugnen viciosamente el testamento otorgado para retrasar e impedir la labor de este último. Al fin y al cabo, nuestras decisiones tienen el propósito de garantizar “una solución justa, rápida y económica de todo procedimiento”. Regla 1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V.
IV
Finalmente, es necesario hacer unas manifestaciones que aclaren el alcance de nuestros pronunciamientos. En primer lugar, nuestras expresiones sobre el Art. 597 del Código de Enjuiciamiento Civil, supra, se limitan al ejercicio del albaceazgo propiamente, que requiere la expedición de cartas testamentarias, y no a la aceptación del cargo. Como es conocido, no “es condición de validez de la aceptación del cargo acudir al tribunal para que se ex-pidan las correspondientes cartas testamentarias”. E. González Tejera, Derecho de sucesiones. Tomo II: la sucesión testamentaria, San Juan, Ed. U.P.R., 2002, pág. 548. Por tal razón, en Andino v. Andino, 83 D.P.R. 138, 141 (1961), expresamos que existen dos tipos de aceptación. La primera es la tácita, que se configura cuando no se renuncia al cargo dentro de los seis días después de conocer de la muerte del testador o del nombramiento por testamento. Art. 820 del Código Civil, 31 L.P.R.A. see. 2517. La segunda es la expresa y se configura cuando se acude al tribunal al amparo del Art. 597 del Código de Enjuiciamiento Civil, supra.
De igual forma, nuestros pronunciamientos sobre la fi-gura del albaceazgo no intentan definir cuáles son las facul-tades del albacea cuando el testador no las especifica. En *862 Flecha v. Lebrón, 166 D.P.R. 330 (2005), este Foro no pudo llegar a un acuerdo sobre esa controversia. En el caso que nos ocupa es innecesario hacerlo, porque en el testamento abierto otorgado en 1994 el causante le otorgó a la albacea poderes amplios. Caso Núm. CC-2009-0591, Apéndice, págs. 59-60. Así pues, resultaría puro dictum abordar ese tema.
V
Por los fundamentos antes expuestos, se revoca la Sen-tencia emitida por el Tribunal de Apelaciones en el recurso CC-2009-303. Se devuelve el caso al Tribunal de Primera Instancia para que proceda con la sustitución de parte, se-gún lo resuelto aquí. Por otro lado, se confirma la Senten-cia emitida por el Tribunal de Apelaciones en el recurso CC-2009-591. Se envía el caso al foro primario para que atienda en sus méritos la petición de cartas testamentarias de forma consecuente con lo resuelto aquí.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta emitió una opi-nión disidente, a la cual se unieron el Juez Presidente Se-ñor Hernández Denton y la Juez Asociada Señora Rodrí-guez Rodríguez. La Jueza Asociada Señora Pabón Charneco no interviene.

 En el caso Núm. KAC2008-372, los hermanos Vilanova Hernández y Vila-nova Román impugnaron el testamento abierto que otorgó su padre. En esencia, adujeron que este último no tenía capacidad para testar. El 29 de julio de 2011 el foro primario dictó sentencia parcial mediante la cual resolvió que el señor Vilanova Díaz estaba capacitado para testar y, en consecuencia, desestimó la acción sobre impug-nación de testamento. Actualmente, el pleito se encuentra ante la consideración del Tribunal de Apelaciones en el recurso KLAN201101211.

 En particular, el Art. 556 del Código de Enjuiciamiento Civil dispone:

“See. 2361. Petición de administración judicial

El albacea testamentario de la última voluntad de un finado, y en caso de que no lo hubiere nombrado o no dejare testamento con validez legal el cónyuge de la *845 persona finada, o cualquier heredero forzoso, o persona que se presente como here-dero testamentario, o legatario, o cualquier acreedor con título escrito no asegurado que tuviere algún crédito contra la persona finada, podrá, mediante una petición debidamente justificada en que se demuestren los hechos necesarios, solicitar la administración judicial de los bienes de dicha persona finada. La petición se presen-tará en la sala del Tribunal de Primera Instancia que tuviere jurisdicción en la última residencia de la persona finada o lugar donde radica la mayor parte de sus bienes, y en ella se hará constar bajo juramento:
(1) La muerte de la persona finada.
(2) Las circunstancias relativas a su último testamento, incluso la fecha en que lo otorgó y lugar en que se halla protocolizado; y en caso que hubiese muerto ab intestato, se hará constar que, según los informes y creencias del peticionario, no dejó testamento válido, especificándose la procedencia y fundamentos de tales infor-mes y creencia.
(3) El interés y derecho de acción del peticionario.
(4) Los nombres y respectivos domicilios de las demás personas con derecho a sucesión en los bienes de la persona finada.
(5) Que la persona finada dejó bienes sujetos a partición con expresión de la cuantía y naturaleza de dichos bienes.” 32 L.P.R.A. see. 2361.

 El texto original en inglés es el siguiente: “The formal instrument of authority and appointment given to an executor by the proper court, empowering him to enter upon the discharge of his office as executor.”

 La Jueza Asociada Señora Fiol Matta critica nuestro análisis de derecho comparado en torno a la figura de las cartas testamentarias, aunque reconoce que esa figura no proviene de España, sino de Estados Unidos. Utilizar un análisis de derecho comparado para auscultar cómo otros ordenamientos lidian con controver-sias jurídicas no es nuevo. Véanse, por ejemplo: Lloréns et al. v. Arribas et al., 184 D.P.R. 32 (2011) (Fiol Matta, J.); CSMPR v. Carlo Marrero et als., 182 D.P.R. 411 (2011) (Fiol Matta, J.); Pueblo v. Rodríguez Pagán, 182 D.P.R. 239 (2011) (Fiol Matta, J.); Coop. Seg. Múlt. v. E.L.A., 180 D.P.R. 655 (2011) (Fiol Matta, J.); Fonseca Zayas v. Rodríguez Meléndez, 180 D.P.R. 623 (2011) (Fiol Matta, J.); Orsini García v. Srio. de Hacienda, 177 D.P.R. 596 (2009) (Fiol Matta, J.); Ramírez Sainz v. S.L.G. Cabanillas, 177 D.P.R. 1 (2009) (Fiol Matta, J.); Pueblo v. Sustache Sustache, 176 D.P.R. 250 (2009) (Fiol Matta, J.); Colón, Ramírez v. Televicentro de P.R., 175 D.P.R. 690 (2009) (Fiol Matta, J.); Pueblo v. Hernández González, 175 D.P.R. 274 (2009) (Fiol Matta, J.).

 El texto original en inglés establece:
“f) No person is qualified to serve as a personal representative who is:
(1) under the age of [21];
(2) a person whom the Court finds unsuitable in formal proceedings.” Uniform Probate Code (ULA) Sec. 3-203(f).

 Las siguientes jurisdicciones lo han adoptado: Alaska, Arizona, Colorado, Florida, Hawaii, Idaho, Maine, Michigan, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Carolina, South Dakota y Utah. Véase, http:// www.law.cornell.edu/uniform/probate.html (última visita, 28 de septiembre de 2011).

 Aunque solo discutiremos en detalle las jurisdicciones de Louisiana y Ohio, dado su desarrollo jurisprudencial de la figura del executor, existe legislación similar en los estados siguientes: California, Cal. Prob. Code Sec. 8420, In re Estate of Bawquier, 88 Cal. 302 (1891); Florida, 20B West’s F.S.A. Secs. 733.301 y 733.303, DeVaughn v. DeVaughn, 840 So. 2d 1128 (2003); Georgia, Official Code of Georgia Ann. Sec. 53-6-40; Illinois, 755 I.L.C.S. Sec. 5/9-1; Massachusetts, A.L.M. GL ch. 190b Sec. 3-103; Michigan, M.C.L.S. Secs. 700.3601 y 700.3613; New Jersey, N.J. Stat. Sec. 3B:10-1; New York, N.Y. C.S.L. SCPASec. 1414; Pennsylvania, 20 Pa. C.S. Sec. 3156; Virginia, Va. Code Ann. Sec. 64.1-122.2; Alabama, Code of Ala. Secs. 43-2-20 y 43-2-22; Alaska, Alaska Stat. Sec. 13.16.245; Arizona, A.R.S. Sec. 14-3601; Arkansas, A.C.A. Sec. 28-48-101; Colorado, C.R.S. Sec. 15-12-601; Connecticut, Conn. Gen. Stat. Sec. 45a-289, National Bank of Commerce v. Smith, 24 A. 273 (1892); Washington State, Rev. Code of Washington A. Sec. 11.28.010; Indiana, Burns Ind. Code Ann. Sec. 29-1-7-4; Iowa, Iowa Code Sec. 633.63; Kansas, K.S.A. Sec. 59-701; Wyoming, *853 Wyo. Stat. Sec. 2-7-102; Kentucky, K.R.S. Sec. 395.015; Maine, 18-A M.R.S.A. Sec. 3-601; Maryland, MD Code, Estates and Trusts, Sec. 6-101; Minnesota, M.S.A. Sec. 524.3-103, Missouri, Missouri Ann. Stats. Sec. 473.110; Montana, Mon. Code Anno. Sec. 72-3-501; Nebraska, R.R.S. Neb. Sec. 30-2444; Nevada, Nev. Rev. Stat. Ann. Sec. 138.020; New Hampshire, New Hampshire RSA Sec. 533.2; New Mexico, N.M. Stat. Ann. Sec. 45-3-203; North Carolina, N.C. Gen. Stat. Sec. 28-A-4-2; Utah, Utah Code Ann. Sec. 75-3-203; Oklahoma, 58 Okl. St. Sec. 126; Oregon, O.R.S. Sec. 113.085; Delaware, 12 Del. C. Sec. 1502; Hawaii, H.R.S. Sec. 560:3-601; Idaho, Idaho Code Sec. 15-3-601; North Dakota, N.D.C.C. Sec. 30.1-12-03; South Dakota, S.D.C.L. Sec. 29-A-3-103; Mississippi, Miss. Code. Ann. Sec. 91-7-35; Rhode Island, R.I. Gen. Laws Sec. 33-8-1, Geaber v. Wakefield Trust Co., 69 A.2d. 822 (1949); Texas, Texas Probate Code Ann Sec. 78; South Carolina, S.C. Code Ann. Sec. 62-3-203; Tennessee, Tenn. Code. Ann. Sec. 30-1-101; Wisconsin, Wis. Stat. Sec. 856.23; Vermont, 14 V.S.A. Sec. 902.

 El texto original en inglés es el siguiente:
“Unless the person named in the testament as executor is disqualified on any of the grounds assigned in Article 3097, the court shall render an order upon his petition for confirmation, confirming him as testamentary executor and directing the issuance of letters testamentary to him after he has taken his oath of office and furnished security, if required.” LSA-C.C.P. art. 3082.

 Nos dice el tratadista Vélez Torres que “la palabra albacea procede del árabe Al Waei, que significa Ejecutor”. J.R. Vélez Torres, Derecho de Sucesiones, San Juan, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1992, T. IV, Vol. III, pág. 338. Aunque somos conscientes de que la figura del albaceazgo no es idéntica al executor del derecho consuetudinario, en el análisis que procede utiliza-remos en todo momento el término “albacea”, en aras de brindar uniformidad a esta figura.

 El texto original en inglés establece:
“A. No person may be confirmed as testamentary executor, or appointed dative testamentary executor, provisional administrator, or administrator who is:
(1) Under eighteen years of age;
(2) Interdicted, or who, on contradictory hearing, is proved to be mentally incompetent;
(3) A convicted felon, under the laws of the United States or of any state or territory thereof;
(4) A nonresident of the state who has not appointed a resident agent for the service of process in all actions and proceedings with respect to the succession, and caused such appointment to be filed in the succession proceeding;
(5) A corporation not authorized to perform the duties of the office in this state; or
(6) A person who, on contradictory hearing, is proved to be unfit for appointment because of bad moral character.” LSA-C.C.P. art. 3097.

 El texto original en inglés es el siguiente: “ ‘Bad moral character’ does not only include the traditional types of behavior or previous bad acts which would indicate that one is not fit to assume the responsibilities of administrator of a succession.”

 El texto completo en inglés es el siguiente:
“When a will is approved and allowed, the probate court shall issue letters testamentary to the executor named in the will or to the executor nominated by holders of a power as described in section 2107.65 of the Revised Code, or to the executor named in the will and to a co-executor nominated by holders of such a power, if he is suitable, competent, accepts the appointment, and gives bond if that is required.” Ohio Rev. Code Ann. 2Í13.5.

 Para una crítica a los tribunales que no expiden cartas testamentarias a favor del albacea nombrado en testament, véase L.A. Kirkpatrick, Treading on Sacred Ground: Denying the Appointment of a Testator’s Nominated Personal Representative, 63 FI. L. Rev. 1041 (2011).